## CADDO NAT. BANK v. MOORE.

No. 1132.   Opinion Filed November 14, 1911.

(120 Pac. 1003.)

1.   **APPEAL AND ERROR** — Presentation of Questions in Lower Court—Sufficiency of Pleading. The petition alleged that: "Defendant knowingly charged bankrupt the sum of $600 interest on the above-mentioned indebtedness; that said sum was greatly in excess of the legal rate of interest allowed by law; that defendant knew at the time of making said loan and charging said amount of interest, that it was charging more than the legal rate of interest." The sufficiency of the petition was not challenged by motion or demurrer. The answer alleged: "Defendant denies that it collected from bankrupt interest in excess of the legal rate allowed by law as alleged in plaintiff's petition." No objection to the introduction of testimony was made. The proof was amply sufficient to sustain the charge of usury, and every requirement of the law relative to proving usury was complied with. **Held** that, after the verdict, in the absence of motion or demurrer, and in view of the answer filed, and no objection to

, the introduction of the testimony having been made, it will be too late to raise objection to the sufficiency of the petition for the first time in this court.

2.   USURY—Remedies of Parties—Question of Law or Fact.  Where the undisputed facts show that a bank knowingly charged usurious interest, and the only possible conclusion to be derived from the evidence, taken as a whole, is that the transaction is usurious, the question is one of law for the court, and not of fact for the jury.

3.   APPEAL AND ERROR — Review — Questions of Fact.  Where there was any evidence reasonably tending to support the verdict of the jury, the court will not disturb the same.

4.   SAME—Review—Discretion of Trial Court—Examination of Witnesses.  A trial court is clothed with large discretion and supervisory power in the conduct of the trial, and unless it affirmatively appears that there was an abuse of such discretion and supervisory power in permitting leading questions to be asked an unwilling and unfriendly witness, or a witness affected with a poor memory, the same will not be reviewed by this court on appeal.

(Syllabus by Robertson, C.)

*Error from District Court, Bryan County; D. A. Richardson, Judge.*

Action by J. A. Moore, trustee in bankruptcy of Will Moon, against the Caddo National Bank.  Judgment for plaintiff, and defendant brings error.  Affirmed.

*Hatchett & Ferguson* and *J. L. Rappallee,* for plaintiff in error.

*Semple & Moore,* for defendant in error.

Opinion by ROBERTSON, C.  This action was commenced in the district court of Bryan county on the 14th day of August, 1908, by the defendant in error, who will hereinafter be called the trustee, against the Caddo National Bank, hereinafter called the bank, to recover the sum of $2,600, on account of alleged preferential payments made by Will Moon while insolvent, and the further sum of $1,209 on the second cause of action, for alleged usurious interest.

The second and third paragraphs of plaintiff's petition are as follows, to wit:

"That petition in bankruptcy was filed against Will Moon on the 27th day of February, 1908; that within four months before the filing of said petition, to wit, on October 29, 1907, said Will Moon, while insolvent, paid defendant the sum of $2,600; that defendant thereby received a preference over the other creditors of said bankrupt; that said amount was paid on an indebtedness owing at the time by said bankrupt to defendant; that defendant knew, or had reasonable cause to know, that he was thereby receiving a preference.

"Petitioner states as a further cause of action against defendant that defendant knowingly charged said bankrupt the sum of $600 interest on the above-mentioned indebtedness; that said sum was greatly in excess of the legal rate of interest allowed by law; that defendant knew at the time of making said loan and charging said amount of interest that it was charging more than the legal rate of interest; that under the laws pertaining to usury governing national banks this trustee is entitled to recover double the amount of interest charged, to wit, the sum of $1,200."

Defendant in addition to a general denial answered as follows, to wit:

"Defendant further denies that within four months before the filing of the petition in bankruptcy against Will Moon that the said Will Moon, while insolvent, paid to this defendant the sum of $2,600, thereby giving this defendant a preference over other creditors of said bankrupt as set out in plaintiff's petition. Defendant denies that it collected from Will Moon, bankrupt, interest in excess of the legal rate allowed by law, as alleged in plaintiff's petition."

On the issues thus joined trial was had to a jury, and a verdict was rendered in favor of plaintiff on the first cause of action in the sum of $809.45, and by direction of the court on the second cause of action for usury in the sum of $99.20.

Many errors were complained of by counsel for the bank in the petition in error. Only five of which, however, are treated in its brief. The first error complained of is that the petition of the trustee fails to set out facts sufficient to constitute a cause of action for usurious interest. The sufficiency of the petition was not challenged in the trial court, by motion, demurrer, or otherwise. The bank, in its answer, "denies that it collected from

Will Moon, bankrupt herein, interest in excess of the legal rate allowed by law." The testimony offered by the trustee, which was not objected to by the bank on account of defective petition, in our opinion cured the defective pleading, and in effect supplied any allegation which had been omitted. Doubtless the trial court would have required the trustee to amend his petition had its attention been called thereto by motion, or demurrer, or by objection to the introduction of evidence under the said second count, had any such effort been made. The bank was content, however, to meet the defective charge made in the petition by a general, as well as a special, denial, and went to trial on the issues thus formed without objection. The testimony offered by the trustee in support of the charge of usurious interest was amply sufficient to sustain the verdict. It was shown that excessive interest was knowingly charged, and that every requirement of the law relative to proving usury was complied with. In its motion for a new trial the bank refers to this question but once and then in the following language, to wit:

"For the reason that the court erred in instructing the jury to find for the plaintiff in the sum of $99.20 on the usury item, because the testimony of the witness Hudspeth, while stating the dates for which some of the notes had run, also testified that his recollection was that the interest charged on those notes was not between the dates given, but that it included past due interest, and as to whether or not that was more than 10 per cent. was a question of fact upon which the jury should have passed, and to which charge the defendant at the time then and there excepted."

In its petition in error the bank raises the question of the insufficiency of the petition for the first time. It was not presented to nor urged upon the trial court in any way by the motion for a new trial. The only allegation in the petition in error with reference to usury was substantially as stated in the motion for new trial. This question should have been raised by motion for new trial and should have been presented to the trial court, but the bank, not having raised it, is deemed to have waived the same. In *McDonald v. Carpenter*, 11 Okla. 115, 65 Pac. 942, it is said:

Caddo Nat. Bank v. Moore.

"The points now contended for in the brief were not raised upon motion for new trial, nor presented to the court for review at all, and the defendant in error was entitled upon these grounds to have the cause dismissed."

See, also, *White et al. v. Madison*, 16 Okla. 212, 83 Pac. 798.

"Grounds not stated in the motion or written statement will not be considered at the hearing by the trial court. And similarly it is held that on appeal or error, the reviewing court will not consider any grounds other than those specified in the motion. A party making a motion for new trial is bound by the reasons assigned therein and can urge no other on appeal. All matters which are grounds for new trial, and which are not set out in the motion are waived." (29 Cyc. 944, and the many cases there cited.)

See, also, in support of this doctrine *A. C. Leggat v. Garrick*, 88 Pac. 788, 35 Mont. 91, 8 L. R. A. (N. S.) 1239; *Crane Co. v. Aetna Indemnity Co.*, 43 Wash. 516, 86 Pac. 850; *Michaels v. McRoy*, 148 Mich. 577, 112 N. W. 129; *Nichols Shepard Co. v. Ringler*, 135 Iowa, 181, 112 N. W. 543; *Hofheimer v. Campbell*, 59 N. Y. 269; *Knapp v. Simon*, 96 N. Y. 284.

The second assignment is that the court erred in instructing the jury to return a verdict for plaintiff for $99.20 on the second cause of action. Counsel for the bank contend that the question as to whether or not it was usurious interest is in all cases a question of fact for the jury. This is not always true. In the case at bar the evidence clearly shows that the bank charged and received interest in excess of 10 per cent. on three items, the total amounting to $49.60. The evidence further clearly shows that the bank knew what it was doing when it charged such interest; that there was a complete understanding as to the amounts and why they were so charged, and there is absolutely no dispute as to the facts in the matter, and when such is the case the question becomes one of law for the court, instead of fact for the jury.

"Where, however, the contract sued on was usurious on its face, the court may declare it to be usurious as a matter of law. And the same is true where the only possible conclusion to be derived from the evidence, taken as a whole, is that the transac-

tion is usurious." (22 Am. & Eng. P. & P. 455; *McLaren v. Clark,* 80 Ga. 425, 7 S. E. 230.)

In *Galveston, etc., Inv. Co. v. Grymes* (Tex. Civ. App.) 50 S. W. 467, the court, discussing this question, says:

"It is also contended that the court should have submitted the question as to the intent of the parties to violate the statute by a usurious contract. There was nothing in the case requiring this. There was no mistake made as to the terms of the notes or the sum to be paid as interest. Both parties intended the notes to be for the amounts named in them and knew how those amounts were obtained. In the sense that they believed the interest charged to be lawful they did not intend to violate the law, but they did intend to do just what they did and that was a violation. Their mistake was simply as to its legal effect."

Had there been any dispute between the parties as to the facts in this case, there might then appear some reason for the contention of counsel. There being none, we can see no error in the ruling of the trial court on this question.

Counsel further contend that the interest on the Slack notes was recovered under the item of usurious interest and also under the item of preferential payments, and quote the testimony of witnesses to sustain said point. The trustee argues that this question cannot be reviewed in this court, for that no proper exceptions were saved in the court below. We have read the testimony carefully, and we know that the court took the question of usurious interest from the consideration of the jury and decided it by a peremptory instruction, thereby leaving only the question of preferential payments for the jury. On page 76 of the record the court, after having very fully and completely instructed the jury on the question of preferential payments, said in response to an interruption by one of counsel:

"I do tell the jury that the building could not be security for the two Slack notes for $110 and $533.35, and also for the sum of $110.60, on which Moon was indorser for the notes he sold, also for the $58.75 court costs, and the sum of $84.05 rent."

Counsel for the bank then made an objection to such instruction as follows:

"I want to except to that unless the court put this limitation: If at any time between the time the debt was created and the

time prior to the date coming four months within the time Will Moon agreed it might stand for security"—which limitation was refused by the court.

Now the court having disposed of the question of usury, and leaving only the question of preferential payments for the jury, it is not reasonable to suppose, in view of the above instruction, that this question of usury entered into the deliberations of the jury, and, further, this court having told the jury that the building could not be security for $533.35 and $110, the Slack notes, and $110.60, which Moon was liable for as indorser, and $58.75 court costs, and $84.05 for rent, making a total of $896.75, and the jury having returned a verdict on the subject of preferential payments for $809.45, it does not look as though the contention of counsel on this matter was correct. Of course we cannot tell just what things the jury considered in arriving at its verdict, but we can say that it might properly have been for $890.75, instead of $809.45, and in view of the further fact that no specific exception was made at the trial, on the subject, we do not think the error, if any there was, is of sufficient importance to warrant us in saying that the instruction of the court was wrong and the finding of the jury erroneous.

The third assignment raises the question that the evidence in the record is insufficient to connect the defendant bank with knowledge of Will Moon's insolvency at the time of the alleged preferential payments. The testimony on this point is conflicting and in some respects very unsatisfactory. Before the jury could reach the conclusion it did, it must necessarily have found: First, that at the time of the payments Will Moon was insolvent. Second, that the payments were made within four months of the institution of bankruptcy proceedings. Third, that the effect of such payments would be to enable the defendant to obtain a greater percentage of its debt than any other creditor of the same class. Fourth, that the defendant bank knew, or had reasonable cause to believe, that it was thereby intended to give it a preference.

The bank does not deny but that Moon was insolvent, nor that the payments were made within four months of bankruptcy, nor that the effect of such payment was to give the bank a greater percentage of its debt than any other creditor of the same class received. These three propositions are thus entirely eliminated from the consideration of this subject, and the only question left for our determination is whether or not the bank, at the time the payment was made, knew, or had reasonable grounds to believe that it was intended thereby to give it a preference. The subject was thoroughly gone into at the trial, and much evidence was introduced by the plaintiff to show knowledge on the part of the bank, and the question was submitted to the jury, as one of fact, by the court, under proper instructions, to which no objections were made by the bank at the time, and the jury determined from the evidence that the bank was chargeable with notice, and with this finding we are not disposed to differ. It is an elemental rule that where there is any testimony in the record tending reasonably to support the verdict of the jury, this court will not disturb the verdict.

"Appellate courts set aside with reluctance the verdict of a jury that was approved by a trial court." (*Howard et al. v. Farrar*, 28 Okla. 490, 114 Pac. 695.)

"Where the evidence reasonably tends to support the verdict, the judgment of the trial court will be affirmed." (*Binion et al. v. Lyle*, 28 Okla. 432, 114 Pac. 618.)

"A judgment will not be reversed by this court on account of the insufficiency of the evidence where the evidence reasonably tends to support the same." (*First Nat. Bank of Guymon v. Arnold*, 28 Okla. 49, 113 Pac. 719.)

Counsel for the bank, under the last assignment of error, charge that the trial court erred in admitting the testimony of the witness Dodd on the subject of Moon's insolvency. That part of the testimony pointed out and complained of is as follows:

"Q. You don't know whether you heard it from some person or not? A. I heard it from more than one person, but as to it being generally known, I wouldn't say."

This was brought out on cross-examination, and in order to determine whether it is incompetent we should examine the balance of his testimony. In the direct examination the following questions were asked and answers obtained:

"Q. In October, November, and December of 1907, and January and February, 1908, did you know the general reputation of Will Moon in Caddo, Oklahoma, as to solvency or insolvency? A. Only just from general conversation; personally I don't know. Q. You say you know it from general conversation? A. I heard people talk about the conditions he was in. Q. The general reputation, Mr. Dodd, is made up of what the people say and think about a man's condition as to solvency or insolvency; now, from what the people generally say, or business men generally say, about the condition of Will Moon's solvency or insolvency, do you know what his condition was on the dates mentioned? A. Yes; I can't recall names now, but I heard some people say. By the Court: State whether or not you know his general reputation as being solvent. A. Yes, from conversation. Q. What was that reputation as to solvent or insolvent? A. Insolvent."

It appears to us that this witness was competent to testify, and no error was committed by the court in permitting the testimony to go to the jury. To be sure it was not as full and complete as it might have been, but that fact would not render it incompetent.

"If a witness knows the general reputation of the other person in the community, he is competent to testify thereto, though he cannot say that he has heard a majority of such persons, neighbors or associates, nor indeed any number of them speak of that reputation." (3 Ency. Ev. p. 2.)

"Upon an issue as to whether a person did or did not know of the insolvency of another or had or had not reasonable grounds to believe such person to be insolvent, common report in that respect is admissible." (7 Ency. Ev. p. 489.)

It is also contended by counsel for the bank that the court erred in permitting leading questions to be asked the witness Will Moon by counsel for the trustee. It is a fundamental rule of evidence that where the witness is unfriendly and unwilling, or affected with a bad memory, leading questions may be permitted under such supervision and restriction as the trial court shall

deem proper, and that unless it clearly appears that the trial court abused its discretion in permitting leading questions to be put, the matter will not be reviewed on appeal. In this case, the record shows that the witness Moon, who was the bankrupt, and whose business affairs were being examined into, some of them being of a questionable character, was a very unwilling witness on some subjects, and at other times his memory was very defective, and it was apparent to the court that leading questions were necessary in order to elicit information concerning the subjects inquired about. We have read the testimony with considerable care, and have failed to discover any abuse of discretion on the part of the trial court in permitting leading questions to be asked him, and therefore conclude that there is no merit in the contention urged by counsel for the bank.

We conclude after a careful examination of the entire record that the bank has had a fair and impartial trial, and that the issues were fairly submitted to the jury under proper instructions by the court, and that the interests of the bank had been cared for and zealously guarded by able and painstaking counsel, and that there is no error in the record, and consequently the judgment of the district court of Bryan county should be affirmed.

By the Court: It is so ordered.

All the Justices concur.