## YARBROUGH v. SPALDING *et al.*

No. 2744.   Opinion Filed March 12, 1912.

Rehearing Denied May 28, 1912.

(123 Pac. 843.)

INDIANS—Lands—Statutory Provisions.  Plenary authority to fix the terms and conditions under which restrictions from the lands allotted to the members of the Creek Tribe of Indians should be removed is vested in Congress; and that portion of the act of May 27, 1908, c. 199, 35 Stat. 312, containing, as one of such conditions and terms, the provision that the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman is not unconstitutional and void, but a valid exercise of the authority vested in Congress.

(Syllabus by the Court.)

*Error from District Court, Muskogee County;*
*R. P. De Graffenreid, Judge.*

Action by Jennie Yarbrough against Josie C. Spalding and another.  Judgment for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

*Merwine & Newhouse* and *George C. Beidleman,* for plaintiff in error.

*Bailey & Wyand* and *J. C. Stone,* for defendants in error.

DUNN, J.  This case presents error from the district court of Muskogee county, and on the record presents but one question for determination by this court.  Plaintiff in error, Jennie Yarbrough, nee Hammonds, a Creek citizen of the half blood, as plaintiff in the lower court, began an action to recover certain

allotted lands which she had alienated during the year 1909, and which were held at the beginning of the action by the defendants, claiming title under plaintiff's deeds. On the trial, there was offered by plaintiff, and received in evidence over defendants' objection, a certified copy of plaintiff's enrollment card, as follows:

"Department of the Interior. Commissioner to the Five Civilized Tribes, Creek Roll, Citizens by Blood.

| "Number | Name. | Age. | Sex. | Blood | Card No. |
|---------|-------|------|------|-------|----------|
| "4431 | Hammonds, | 8 | F. | ½ | 1393 |

"Jennie (age eight)

"This is to certify, that I am the officer having custody of the approval roll of Creek citizens by blood, and that the above and foregoing is a true and correct copy of that portion of said roll appearing at Number 4431. Enrolled as of January 18, 1900, Muskogee, Oklahoma.

"C. H. Drew, Clerk.

"Muskogee, Oklahoma, November 22, 1910.

"J. G. Wright,

"Commissioner to the Five Civilized Tribes."

Defendants then offered, over plaintiff's objection, evidence which, if competent, established that the plaintiff was eighteen years of age on the 20th day of December, 1907. The trial court found for the defendants, which necessarily included a finding that this was the plaintiff's correct age, and rendered a decree holding valid the deeds to the allotted lands in question.

On the denial of the motion for new trial and rendition of judgment, plaintiff lodged her action in this court for review, contending that under the terms of the act of Congress of May 27, 1908, c. 199, 35 Stat. 312, evidence, other than that presented by the enrollment records of the Commissioner to the Five Civilized Tribes, shown herein by the enrollment card, was inadmissible to show her age; and that thereunder she was shown, at the time of the transfers made by her, to have been of less than the qualified age to make them. The portions of the act in question desirable or necessary to be read for a full understanding of the issue presented, are as follows:

"1. That from and after sixty days from the date of this act, the status of the lands allotted heretofore or hereafter to

allottees of the Five Civilized Tribes shall, as regards restric-
tions on alienation or incumbrance, be as follows:

\* \* \* \* \* \* \* \* \* \* \* \*

"b. All lands, except homesteads, of said allottees enrolled as.
mixed-blood Indians having half or more than half and less than
three-quarters Indian blood shall be free from all restrictions.
\* \* \*

"2. \* \* \* The jurisdiction of the probate courts of the state
of Oklahoma over lands of minors and incompetents shall be sub-
ject to the foregoing provisions, and the term minor or minors,.
as used in this act, shall include all males under the age of twenty-
one°years and all females under the age of eighteen years.

"3. That the rolls of citizenship and of freedmen of the
Five Civilized Tribes approved by the Secretary of the Interior
shall be conclusive evidence as to the quantum of Indian blood
of any enrolled citizen or freedman of said tribes and of no.
other persons to determine questions arising under this act and
the enrollment records of the Commissioner to the Five Civilized
Tribes shall hereafter be conclusive evidence as to the age of
said citizen or freedman."

The foregoing act and the questions presented have received
a construction and are answered by Judge Pollock, sitting in the
United States Circuit Court for the Eastern District of Okla-
homa in the case of *Bell v. Cook et al.,* 192 Fed. 597, wherein,
after quoting at length from the act in question, he said:

"The act of Congress in question defines the term 'minor'
as a male under the age of 21 years and a female under the age
of 18 years. Theretofore Congress had conferred on the United
States Commission to the Five Civilized Tribes power to enroll
the members of said tribes, for the purpose of ascertaining
thereby what persons were entitled to participate in the joint
tribal property, and in making said rolls to inquire and deter-
mine, among other matters, the age, sex, and degree of Indian
blood, if any, of such enrolled members, to the end that suitable
governmental regulations and restrictions might be thrown around
such persons as were found entitled to participate in the division
of the tribal property against a waste of their property by in-
considerate and ignorant alienation; and said Commission did,
in compliance with authority thus conferred, among other mat-
ters, inquire of, determine, and state on the public rolls by it
prepared, the age, sex, and degree of Indian blood, if any, pos-
sessed by those enrolled thereon. By section 3 of the act of

May 27th, above quoted, it is seen that Congress declared the public rolls of citizenship and of freedmen members of the Five Tribes conclusive evidence of the quantum of Indian blood possessed by an enrolled citizen or freedman; and by the enrollment records of the Commission the age of any enrolled citizen or freedman to be conclusive of the age of such person in the determination of the right of such person to alienate their allotments. The object, purpose, and intent of Congress by this portion of the act was not, by its *ipse dixit,* to make that which was black white, or the reverse, nor was it for the purpose of overthrowing the multiplication table, nor was it enacted for the purpose of putting questions of fact beyond the pale of judicial inquiry. This, of course, it could not do, and would not assume to attempt. On the contrary, however, said portion of the act, and the public rolls prepared under authority of Congress as well, were all part and parcel of a general scheme worked out and employed by the government in the allotment of tribal property in severalty to the members of the tribes, and in an endeavor to protect such allottees in their several property rights by such means and to such extent as the exigencies of the case, the ignorance and environment of the allottee considered, was demanded for the best interests of the wards of the government. In carrying out this scheme of protection, Congress, as it had the undoubted right to do, defined the word 'minor' as it did therein, and referred any and all persons intending to become purchasers of any portion of the tribal property from an allottee thereof, not to the uncertain hazard of a judicial inquiry, based on the evidence of ignorant, incompetent, and interested witnesses, but to the fixed and definite public rolls, to ascertain whether such allottee did or did not possess the qualified age or requisite degree of Indian blood to confer on him the power of disposition under the law. If an intending purchaser from an allottee of tribal property, holding the public rolls in one hand and the act in the other, by a comparison of the two, found such allottee possessed the power of disposition under the act and the rolls, he was at liberty to purchase, and he was protected in such purchase. If, on the contrary, the law and the public rolls, considered together, denied the right of the allottee to convey, a purchaser from such allottee was not protected, and this regardless of the true state of facts as they might be made to appear in this case."

In the consideration of a law, all doubts are resolved in favor of its constitutionality. When it is attacked, if a doubt

exists, it must be resolved in its favor. Counsel for defendants contend that the section of this act making the rolls conclusive evidence as to the age of the allottee is unconstitutional, unenforceable, and void. The act in question is an act of Congress, and, as we have seen, has been interpreted and held valid by the federal court, sitting within the jurisdiction wherein these people and their lands are. The reasons advanced in support of the conclusion reached by that court appear to us to be sound and correct, and we adopt them. It would hardly be possible to enlarge on the language used by the Supreme Court of the United States, and later followed and used by this court, in recognizing the plenary power possessed by Congress in dealing with these Indian wards and their property. Among the numerous cases in which it is noted is that of *Lone Wolf v. Hitchcock*, 187 U. S. 553, 23 Sup. Ct. 216, 47 L. Ed. 299, wherein, speaking to this subject, Mr. Justice White said:

"The power of the general government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection, as well as to the safety of those among whom they dwell. It must exist in that government, because it never has existed anywhere else, because the theater of its exercise is within the geographical limits of the United States, because it has never been denied, and because it alone can enforce its laws on all the tribes. That Indians who had not been fully emancipated from the control and protection of the United States are subject, at least so far as the tribal lands were concerned, to be controlled by direct legislation of Congress is also declared in *Choctaw Nation v. United States,* 119 U. S. 1, 27, 7 Sup. Ct. 75, 30 L. Ed. 306, 314, and *Stephens v. Cherokee Nation,* 174 U. S. 445, 483, 19 Sup. Ct. 722, 43 L. Ed. 1041, 1054."

Quoting the foregoing, this court, in the case of *Gleason et al. v. Wood,* 28 Okla. 502, 114 Pac. 703, said:

"Not only has this power been exercised over the tribal affairs, but it is extended to the property of the members and the disposition thereof, its tenure, title, and all rights growing out of it. The individual interest therein which has been given has been by virtue of its plenary legislative authority, and the interest and title withheld has been under the same power. For, as was said by Judge Hook, in *Ligon et al. v. Johnson et al.,* 164 Fed. 670, 90 C. C. A. 486, 'The disposition of the tribal

property of the Indian tribes falls within the legislative domain; the power of Congress is supreme, and its action is conclusive upon the courts' "—citing authorities.

And having under consideration this identical act of Congress, this court, speaking through Mr. Justice Hayes, in the case of *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755, said:

"It is unnecessary to comment upon the extent or limitation of the authority over the lands and property of such Indians that is by said provision of the Enabling Act reserved to the United States government; for, whatever be the extent of that authority or its limitations, we think it cannot be questioned that said authority reserved is sufficient to retain in the government of the United States jurisdiction over the restricted lands of said Indians to determine and provide how and in what manner such restrictions shall be removed; and that, until such restrictions are removed, the lands of said Indian minor allottees are not within the jurisdiction of the probate courts of the state, with power in said courts to order the sale thereof for any purpose. Since the power to remove such restrictions is wholly within Congress, it may say upon what terms and conditions they will be removed, and under the supervision of what court or officer the sale of same shall be made."

Among the terms and conditions fixed by this act are found the provisions that the jurisdiction of the probate courts of the state of Oklahoma over the lands of minors and incompetents is made subject to the foregoing provisions, to wit, the status of the lands, and thereunder was defined the term "minor" or "minors," to the end that the state might not pass an act making either a less or a greater number of years conclude the minority of the parties with whom it was then dealing, or otherwise effect a change in their rights of alienation. It was also provided that the rolls made by the Dawes Commission, approved by the Secretary of the Interior, should be conclusive evidence as to the quantity of Indian blood of any enrolled citizen or freedman; and that they should hereafter be conclusive evidence as to the age of the said parties in determining matters arising under the act. The power to thus legislate for these citizens of the state of Oklahoma was reserved to Congress by section 1 of the Enabling Act (Act June 16, 1906, c. 3335,

34 Stat. 267), and recognized and sanctioned in section 3 of article 1 of the Constitution; and the state courts are bound, in good faith, to enforce these congressional regulations in reference to the lands of members of these tribes. The record introduced was one made under congressional authority by a commission organized for the purpose of perfecting these rolls. A census was authorized, if not directly enjoined, and the information, thus gathered at great expense, was in possession of Congress. All agree upon the purpose and end to be secured by restricting these allottees in their right to alienate their lands.

Counsel charge and admit on both sides that on a trial, wherein the question of the ages of these allottees arises, virtually no dependence whatsoever is to be placed in the accuracy of the testimony or evidence adduced. It is asserted and admitted to be a matter of general knowledge that these people generally kept but few, if any, records showing their family history or ages; and that as a consequence any proof adduced at any time in any controversy is subject to all the fluctuations incident to ignorance or self-interest. This being true, Congress cannot be presumed to have been ignorant of these facts; and these ages, thus fixed by an impartial judicial commission, without interest to do aught else than, with such light as it could obtain, fix them correctly, were in the main more likely to be accurate than ages established at a time and under conditions where self-interest or ignorance would produce either deception or error. The stability of land titles is of paramount importance every-where; and this wise and salutary statute of Congress will have much to do with permanently determining the same to a large quantity of this tribal land. Congress has not sought herein to make that which was false true, or to make that which was true false; the ages fixed were not for the purpose of establish-ing any rights whatsoever under the laws of the state; they were not conclusive of the age of consent, of marriage, or of the right to exercise the elective franchise; they refer solely to the deter-mination of questions arising under the act. The fact that some of these ages are manifestly inaccurately stated in the records

in no wise changes or alters the rule laid down. The power of Congress to say upon what terms restrictions should be relaxed or removed was absolute; and the act in this respect is, in our judgment, constitutional and valid.

It therefore follows that the trial court erred in denying the plaintiff's motion for a new trial; and its order and the judgment are accordingly reversed, and the cause remanded to the trial court, with instructions to set the same aside and proceed in accordance with the views expressed in this opinion.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; KANE, J., absent, and not participating.