## LAWLESS v. RADDIS.

No. 2434.    Opinion Filed January 7, 1913.

(129 Pac. 711.)

1. **FRAUD — Deceit — Verdict — Evidence.** Evidence examined, and held sufficient to sustain the verdict.

2. **EVIDENCE—Records—Indian Rolls.** It is not error to permit the introduction as evidence a printed copy of the final rolls of the citizens and freedmen of the Five Civilized Tribes, prepared by the Commission to the Five Civilized Tribes, and approved by the Secretary of the Interior; the same being printed under the authority conferred by act of Congress.

3. **INDIANS—Identification—Government Rolls — Effect.** The rolls referred to in paragraph 2 of the syllabus are conclusive evidence of the quantum of Indian blood of any enrolled citizen of any of the Five Civilized Tribes, not for the purpose of proving that particular fact, but for the purpose of fixing the status of the Indian's allotment and the capacity of the allottee to alienate the same.

4. **APPEAL AND ERROR—Review—Necessity of Exceptions.** This court will not consider alleged errors of the trial court, unless such alleged errors appear on the record of the case, and exceptions have been taken thereto by the complaining party.

5. **SAME—Nonprejudicial Errors.** The court in every stage of action must disregard any error or defect in the pleadings or pro-

ceedings, which does not affect the substantial rights of the adverse party, and no judgment will be reversed or affected by reason of such error or defect.

(Syllabus by Robertson, C.)

*Error from District Court, Ottawa County;*
*T. L. Brown, Judge.*

Action by Paul Raddis against P. J. Lawless and John S. Hale to recover money obtained by deceit and fraud. Judgment for the plaintiff against Lawless, who brings error. Affirmed.

Paul Raddis, defendant in error, alleges that on April 7, 1910, the plaintiff in error, P. J. Lawless, together with one John S. Hale, represented to said defendant in error that said Lawless had a tract of land for sale; that the same was free and clear of incumbrances; that he offered to loan defendant in error the sum of $1,000 on his promissory note, to be secured by a mortgage on the land, in order that defendant in error might be enabled to buy the same; that Lawless represented to him that the restrictions on the land (which was originally an Indian allotment) had been removed, and that he, Lawless, held the writings showing the removal of such restrictions; that all of said representations were false and untrue; that defendant in error, relying upon the statements of Lawless as being true, agreed to purchase the land, but, when the time came for transferring the same, he discovered that the deed thereto was to be executed by said John S. Hale, and not by Lawless; that at the time of executing the deed both the defendant Lawless, and his codefendant, Hale, told him that the title to the land was clear, and that they were willing to execute a warranty deed to the same, and that relying upon these representations so made by the defendant Lawless, and his codefendant, Hale, he paid defendant Hale the sum of $500 and executed his note and mortgage to Lawless for $1,000 to complete the payment on the land; that said note is negotiable, and that Hale is insolvent, and the deed so executed by Hale to the defendant did not convey a good title because of the fact that said land was an allotment of a full-blood Cherokee Indian, and restricted by the laws of the United States, and which restrictions had not been removed and the same was therefore inalien-

able; that all of the representations and statements made by the said Lawless and his codefendant, Hale, to the defendant in error, concerning the title to said land, were false and untrue, and were known to be false and untrue at the time they were made, and were made with the specific intent to cheat and defraud the said defendant in error, who, relying thereon, was induced thereby to pay the money, and execute the note and mortgage, as aforesaid. He prayed that the note and mortgage be canceled, and that he be given judgment against Lawless in the sum of $500 for the money actually paid, and a further sum of $1,000 in case the note and mortgage were not returned to him by Lawless, or surrendered to the court. To the allegations of his petition the defendant Lawless entered a general denial, and filed a counterclaim, alleging that prior to April, 1910, he had been requested by Hale to find a purchaser for the land described, that he knew nothing about the title to the land, and that Hale was to pay him $25 commission for selling the same, and at the solicitation of defendant in error he was induced to loan him the sum of $1,000 with which to purchase said land from Hale, and further alleging that the representations made by the defendant in error in his petition were false, and that he would not have loaned the $1,000 except for such false representations so made by the defendant in error, and prayed judgment against the defendant in error for $1,000, with interest at 8 per cent. per annum and for $500 as damages and $25 as commission, or a total of $1,525. Hale filed a separate answer, but made no further appearance in the case, and no judgment was rendered against him. Raddis filed a reply to the allegations of the answer and the counterclaim, and upon the issues thus joined trial was had to a jury, and a verdict was returned in favor of defendant in error and against Lawless in the sum of $1,500, with interest at 6 per cent. from April 18, 1910, upon which verdict judgment was entered by the court. Raddis, at the time the court entered judgment, agreed to enter a *remittitur* in the sum of $1,000, providing Lawless would surrender the note that had been given him by Raddis, which Lawless refused to do. Raddis

still offers to enter a *remittitur* in the Supreme Court in the sum of $1,000 if said note is surrendered to him by Lawless.

*O. L. Rider,* for plaintiff in error.

*O. F. Mason* and *F. D. Fulkerson,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). The first error assigned in the brief of plaintiff in error is "the facts are not sufficient to sustain the verdict." The petition states a good cause of action, and the sufficiency of its allegations, charging deceit and fraud, is in no wise questioned by plaintiff in error. The consideration of the above assignment, therefore, necessitates a complete review of all the evidence. We have examined the same with care, and do not agree with counsel for plaintiff in error. On the contrary, there is ample evidence to sustain the verdict of the jury under the allegations of the petition. The evidence clearly shows that Lawless made the sale to Raddis as alleged in the petition; that he and Hale and others, in their presence, told Raddis that the title to the land was good; that Raddis throughout the entire transaction insisted that he would not purchase unless the title was good. There is an attempt to show that Raddis insisted only on a warranty deed, and that he obtained such from Hale, and that, therefore, all other representations, even though made, were harmless, etc. The evidence shows that Raddis was ignorant concerning the methods employed by Lawless and Hale in and about the sale of this land, and that he was unsuspecting and had confidence in them, and believed he was to have, and that he was obtaining, a clear title to the land. The evidence also shows that Lawless and Hale knew that the restrictions on the land had not·been removed, and that the same was inalienable, and that a warranty deed from Hale, who was insolvent, would not carry a clear title to Raddis. In *Prescott v. Brown,* 30 Okla. 428, 120 Pac. 991, it was said by this court in the syllabus:

"A vendee has a right to act on the positive representations of existent material facts made by a vendor, even though the means of knowledge were open to him. The real question in such matters is: Was the party in fact deceived by the false

representations? 'It is as much an actionable fraud willfully to deceive a credulous person with an improbable story as it is to deceive a cautious and sagacious person with a plausible one.'"

Reference is also hereby made to the authorities cited in that case sustaining the rule enunciated in the foregoing quotation. The assignment of error under consideration, involving, as it does, the determination of the facts, under the unchallenged allegations of the petition, will not authorize or warrant this court in disturbing the verdict of the jury, especially where there is any evidence reasonably tending to support the same. *Caddo Nat. Bank v. Moore,* 30 Okla. 148, 120 Pac. 1003; *Grimes v. Wilson,* 30 Okla. 322, 120 Pac. 294; *Prescott v. Brown, supra; Allen v. Kenyon,* 30 Okla. 536, 119 Pac. 960; *Edwards v. Miller,* 30 Okla. 442, 120 Pac. 996; *Bland v. Peters,* 30 Okla. 798, 120 Pac. 631. In this case we have no hesitancy in saying that there is ample competent evidence in the record to sustain the verdict of the jury and the judgment of the court.

It is next urged that the court erred in permitting the introduction as evidence of a printed copy of the final rolls of the citizens and freedmen of the Five Civilized Tribes, prepared by the Commission to the Five Civilized Tribes, and approved by the Secretary of the Interior on or prior to March 4, 1907, the same being a book compiled and printed under authority conferred by the Act of Congress approved June 21, 1906. From this printed copy it was shown that Reed Wilson, the allottee of the land sold by Hale and Lawless, to Raddis, was a full-blood Cherokee Indian, and incapacitated to convey, unless his restrictions had been removed.

Counsel for plaintiff in error contends that the act of Congress making said rolls conclusive evidence as to the quantum of Indian blood of any enrolled citizen of the tribe is unconstitutional and void, and in conflict with the "due process of law" clause of the federal Constitution, and for other reasons. The brief contains an elaborate discussion of the various objections urged by plaintiff in error, but the question is no longer open to discussion in this state. Congress in the exercise of its undoubted power to deal with the subject has enacted that the

rolls of citizenship of the Five Civilized Tribes shall be conclusive evidence of the quantum of Indian blood, not for the purpose of establishing that particular fact, but for the purpose of fixing the status of the allotment and the capacity of the allottee to alienate the same. It was competent for Congress to do this in the furtherance of its well-established policy in dealing with the Indians. By this act of Congress it is not attempted nor intended to alter existing rules of evidence, but merely to determine the persons who have lands affected thereby. This has been settled by the well-considered opinion by Judge Pollock in *Bell v. Cook et al.* (C. C.) 192 Fed. 597, cited with approval and followed in *Yarbrough v. Spaulding et al.*, 31 Okla. 806, 123 Pac. 843. The objection urged against the introduction of the printed copy of the rolls is not good. Section 5896, Comp. Laws 1909, provides that:

"Public documents purported to be printed by authority of Congress or either house thereof, shall be evidence to the same extent that authenticated copies of the same would be."

Inasmuch as certified copies of the rolls would have been admissible, the copy printed by authority of Congress was likewise admissible.

The objection to the evidence of the witness Tuthill was properly overruled, for the reason that Lawless, in a cross-petition, asking for affirmative relief against Raddis, alleged that by the false and fraudulent representations of Raddis he (Lawless) was induced to loan him the sum of $1,000 on the theory that the title to the land in question was good, and that, had he (Lawless) known that the title was bad, he would not have made the loan. Tuthill testified that he, prior to the sale of the land to Raddis, had told Lawless that Reed was a full-blood Cherokee Indian. If, therefore, Lawless knew that Reed was a full-blood Cherokee Indian, he could not have been defrauded by the statement of Raddis. Such testimony was also admissible for the purpose of showing good or bad intent on the part of Lawless in his representations to Raddis concerning the title to the land.

Complaint is made that instruction four does not state cor-

rectly the law applicable to the facts of the case. There was no exception saved to the giving of this instruction, nor was any objection to the giving of the same made in the motion for a new trial. This court will not consider alleged errors of the trial court, unless such alleged errors appear on the record of the case, and exceptions have been taken thereto by the complaining party. *Taylor v. Johnson,* 23 Okla. 50, 99 Pac. 645; *Saxon v. White,* 21 Okla. 194, 95 Pac. 783; *Osborne & Co. v. Case,* 11 Okla. 479, 69 Pac. 263.

The only other objection urged which is necessary for us to consider is that the verdict of the jury is not sustained by the evidence. This question has been heretofore fully disposed of, but, in addition to what has already been said, it may be observed that the evidence clearly shows that the title to the land sold to Raddis was not in Hale, but that it, as a matter of fact, was in Reed Wilson, a full-blood Cherokee Indian; that Raddis, by the false representations of Hale and Lawless, was induced to pay to Hale and Lawless $500 in cash, and to give them a negotiable note for $1,000; that Lawless well knew there was no title in Hale, at the time he was attempting to sell the land to Raddis. The jury by its general verdict found all these facts to be true. After the verdict had been returned, counsel for Raddis in open court offered to enter a *remittitur* in favor of Lawless, in the sum of $1,000, the amount of the note, if Lawless would surrender the same to him or to the court for cancellation. The offer was refused, and by failure to accept the same Raddis was entitled to a judgment against Lawless for the amount of the note. Even now Raddis offers to enter a *remittitur* in this court for the amount of the note and interest. Lawless, if he still refuses to produce and surrender the note, is in no position to complain, or to invoke the technicalities of the law in an attempt to work an injustice and compel this court to do a wrong.

It is not every error occurring at the trial that will warrant this court in reversing a judgment.

"The court in every stage of the action must disregard any error or defect in the pleadings or proceedings, which does not

affect the substantial rights of the adverse party, and no judgment shall be reversed or affected, by reason of such error or defect." (Comp. Laws 1909, sec. 5680.)

On appeal the court must give judgment without regard to technical errors or defects, or to exceptions that do not affect the substantial rights of the parties. We are of opinion that plaintiff in error has had a fair and impartial trial, that substantial justice has been done, and that there are no such errors in the record as would warrant an interference with the verdict of the jury.

The judgment of the lower court should be affirmed, with the following modification; i. e.: If, within 30 days after the receipt of the mandate herein by the clerk of the district court of Ottawa county, Lawless, the plaintiff in error, shall file in said court the original note for $1,000 given by Paul Raddis and Lydia Raddis to J. P. Lawless, on April 9, 1910, for cancellation by the clerk, and delivery to Raddis, then, and in that event, the judgment herein shall be reduced by the amount of the said note and interest. However, on failure of Lawless to produce and deliver said note for cancellation as above required, then the original judgment shall be and remain in full force and effect, and execution thereon shall issue immediately after the expiration of said 30 days as aforesaid. All costs to be taxed against plaintiff in error.

By the Court: It is so ordered.