**JACK v. HOOD et al.**

District Court, N. D. Oklahoma.  September 10, 1928.

No. 158.

W. R. Green, of Council Bluffs, Iowa, W. M. Leise, of Tulsa, Okl., and George H. Mayne, of Council Bluffs, Iowa, for plaintiff.

Andrews & Andrews, of Chandler, Okl., Koerner, Fahey & Young, Lashley & Rambo, Biddison, Campbell, Biddison & Cantrell, John H. Brennan, and G. J. Neuner, all of Tulsa, Okl., R. H. Hudson, of Bartlesville, Okl., and H. O. Bland, Ramsey, De Meules & Martin, and Alvin Richards, all of Tulsa, Okl., for defendants.

KENNAMER, District Judge. This action was instituted by the plaintiff to quiet title to 120 acres of land, allotted to him as his surplus allotment as a member of the Creek Tribe of Indians. The bill of complaint alleges that the plaintiff was enrolled as a ²¹⁄₃₂ Indian by blood opposite roll No. 2733; that the enrollment of the plaintiff by the Dawes Commission of the degree ²¹⁄₃₂ Indian blood was due to a mistake in computation, as the plaintiff was the son of Cæsar Jack, a full-blood Creek Indian, and of Sallie Knowles Scott, the wife of Cæsar Jack, full-blood Creek Indian; that in truth and in fact, as shown by the complete records in connection with said enrollment, the plaintiff is a full-blood Creek Indian, and restricted. The defendants J. M. Hood and Lula A. Hood, wife of J. M. Hood, claim

legal title and estate to the surplus allotment of the plaintiff by reason of certain pretended deeds, as follows: Warranty deed from Eddie Jack to Montford Jones, dated July 28, 1906; deed from Montford Jones to Mertie I. Whiteman, dated March 6, 1909; deed from Eddie Jack to W. A. Whiteman, dated March 15, 1909; warranty deed executed by W. A. Whiteman and Mertie I. Whiteman to John M. Hood, dated April 8, 1909; deed from Eddie Jack to Whiteman, dated September 22, 1910; deed from Whiteman to John M. Hood, dated October 25, 1910; deed from Eddie Jack to Whiteman, dated December 31, 1910; deed from Whiteman to Hood, dated January 10, 1911. It is alleged all of said pretended deeds from Eddie Jack to Whiteman, except the deed of December 31, 1910, were executed at a time when Eddie Jack was a minor, and that the deed of December 31, 1910, is a forgery; that all of the deeds were executed by Eddie Jack when he was a restricted Indian, for the reason that he was in fact a full-blood Indian, although enrolled upon the rolls made by the Dawes Commission and approved by the Secretary of the Interior as a ²¹⁄₃₂ Indian by blood.

The defendant John M. Hood makes further claim of title in and to the premises hereinbefore described by reason of a judgment rendered in the district court of Creek county, Oklahoma, on or about May 4, 1914, in case No. 3484, wherein John M. Hood was plaintiff and Mrs. J. W. Johnson, Eddie Jack, and others were defendants. The action was one to quiet title in the plaintiff Hood; that the pretended judgment is wholly null and void as against Eddie Jack, for the reasons Eddie Jack was more than ¾ Creek Indian by blood and restricted, and was not subject to the jurisdiction of the court; that the petition and other records in the action show upon their face that the judgment was void, and that the rendition of the judgment was obtained and procured through fraud practiced upon the court at the time the journal entry of the judgment was signed; further, for the reason the records of the proceedings in the action show that the petition therein filed alleged that Eddie Jack was an adult Creek Indian, being enrolled on the Creek roll opposite No. 2733, and enrolled as of the age of 10 years, male, ²¹⁄₃₂ blood, on census card No. 842; that the notice of publication to Joe Johnson, one of the defendants, filed by the plaintiff in the action, averred the deed to Mrs. J. W. Johnson, or Joe Johnson, was void for the reason that, at the time of the

making thereof, the grantor, Eddie Jack, was a minor and incapable of conveying said premises, and that the deed was void for the further reason that the grantor, Eddie Jack, was a Creek Indian of the full blood. The enrollment of Eddie Jack, as set out in the petition, shows his age as of 10 years at the date of enrollment, and he would not become 21 years of age until September 23, 1910, and that the plaintiff in the action, John M. Hood, bases his claim to said premises upon certain deeds from Eddie Jack dated prior to the date on which it was alleged Johnson had obtained his deed, and that the plaintiff in procuring a judgment quieting his title from the district court of Creek county had practiced a fraud upon the court; that no personal service was in fact made upon the defendant Eddie Jack in the action, and for that reason said judgment was void.

The bill alleges that the Roxana Petroleum Corporation, and all other defendants in the action, claim some interest in the premises under and by virtue of certain oil and gas leases, or the assignments thereof, derived from and through the defendant John M. Hood. The bill of the plaintiff prays for a decree requiring all of the defendants to set forth the nature of their claims in and to the premises; for judgment establishing and quieting the title of the plaintiff, enjoining the defendants from claiming any title or asserting any interest in the premises adverse to the plaintiff, and for all further relief as may be just and equitable.

A supplemental and amended bill was filed, seeking the appointment of a receiver over the lands, setting up the operations of the various defendants in removing the oil and gas from the premises. All of the defendants filed answer asserting title to the premises, bottomed upon the conveyances which Hood had received from Whiteman and Montford Jones, setting up a certified transcript of the proceedings in the action to quiet title in the district court of Creek county, and prayed for judgment quieting their title against the claims of the plaintiff.

A motion was presented to transfer the case to the law side of the docket. Ruling on this motion by consent of the parties was withheld until the case came on for final determination. The parties in open court filed a stipulation waiving the right to a trial by jury.

█ The court is of the opinion that the motion to transfer to the law side of the docket should be overruled, first, for the reason the defendants are in possession of the lands, asserting title thereto, under conveyances alleged to have been executed by the plaintiff Indian allottee, and by their answer deraigned their title, and prayed the court for affirmative relief quieting their title. The court should proceed to determine the equitable issues raised by the defendants. Furthermore, the plaintiff seeks to vacate and set aside and have held for naught a certain judgment of the district court of Creek county, which the plaintiff asserts was obtained through fraud, and under which the defendants assert title.

In the case of Roubedeaux et al. v. Quaker Oil & Gas Co. of Oklahoma et al., 23 F.(2d) 277 (8 C. C. A.), the rule is announced as follows: "Suit in equity may be brought to quiet title, even though defendants were in possession, where suit was to avoid deed obtained by fraud, which was recorded and created cloud on complainant's title, and made it impossible for her to maintain action of ejectment or any other adequate remedy at law."

In this case plaintiff cannot proceed at law with an outstanding judgment against him, unless such judgment appeared to be void from an inspection of the judgment roll. The attack upon such judgment for extraneous fraud must be direct. It appears from the plaintiff's pleadings herein filed that it was the intention of the pleader to make a direct attack in equity. It is true the complainant's pleadings in this action contained many allegations that would be proper in a law action. However, I am of the opinion, from a consideration of the bill of complaint, the answer, and reply, that equitable issues are presented. The equitable issues should first be determined. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232; Ayres Mercantile Co. v. Union Pacific Ry. Co. (C. C. A.) 16 F.(2d) 395; Denison v. Keck (C. C. A.) 13 F.(2d) 384; Horbach v. Coyle (C. C. A.) 2 F.(2d) 702.

█ There is no merit in the contention made that Eddie Jack, the allottee, is a full-blood Indian and restricted. For the purpose of alienating the lands in controversy, the rolls, as made by the Dawes Commission and approved by the Secretary of the Interior, are conclusive of the fact as to the quantum of Indian blood, irrespective of what degree of blood his parents may have possessed. Justice Van Devanter, speaking for the Supreme Court of the United States, in the case of United States v. Fer-

guson et al., 247 U. S.'175, 38 S. Ct. 434, 62 L. Ed. 1052, said:

"The rolls were made and approved by the Secretary, a statement of the age, sex, and quantum of Indian blood of each member being included in the descriptive matter thereon. The Act of April 26, 1906 [34 Stat. 145], supra, besides making the presence or absence of restrictions on the alienation of allotments dependent on the quantum of Indian blood possessed by the allottee or heir, declared that 'the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior.' The Act of June 21, 1906, c. 3504, 34 Stat. 325, 340, directed that a printed and bound copy of the approved rolls be deposited 'in the office of the recorder in each of the recording districts for public inspection.' Printed copies were so deposited. * * *

"We think the court rightly excluded the oral testimony and gave controlling effect to the approved roll. When Congress came to make a difference between full-blood and mixed-blood Indians, by subjecting the former to restrictions not applied to the latter, it evidently deemed it better for the Indians and all concerned that there be some fixed, easily accessible and reasonably reliable evidential standard by which to determine, for the purpose of the matter then in hand, who were of the full-blood and who of the mixed-blood. Congress had power to deal with the subject, and from among the standards which might have been prescribed it selected the rolls made at its direction by the commission charged with making the allotments. Not improbably it was thought that the rolls, even if not altogether free from mistake and error, would be quite as reliable as oral testimony and would have the advantage of being both easily accessible and enduring. But, passing the reason for it, Congress directed that the quantum of Indian blood 'be determined' by the approved rolls, and it did this in a connection which leaves no doubt of its purpose to give controlling effect to the rolls. Emphasis was given to this purpose in the Act of May 27, 1908, c. 199, 35 Stat. 312, where, in again dealing with restrictions on the alienation of allotments, it was provided that the approved rolls 'shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this Act.' Both the federal and state courts in Oklahoma have for several years applied the view here expressed. Bell v. Cook [C. C.] 192 F. 597, 604–605; Yarbrough v. Spalding, 31 Okl. 806 [123 P. 843]; Lawless v. Raddis, 36 Okl. 616 [129 P. 711]."

The plea of forgery, interposed in this case as against the validity of the deeds, cannot be sustained, for the reason the evidence is not of that satisfactory character to establish such a plea. The only evidence to support the plea is that of the plaintiff himself that he did not execute any of the deeds under which the defendants deraign their title, as against many witnesses testifying to the contrary.

The evidence wholly fails to establish such fraud as would invalidate the judgment of the district court of Creek county, quieting the title of John M. Hood in and to the lands. It is true that some of the deeds set up in his bill appear to have been executed while Eddie Jack was a minor, but there is no dispute in the evidence that the deed of December 31, 1910, was executed subsequent to the time that the plaintiff had arrived at the age of 21 years. The return of the officer showed that personal service of summons was made upon Eddie Jack as a defendant in the action in Creek county, and in addition to this evidence the officer making the service testified that he actually made the service.

The established rule in this state is that, where a judgment is void upon its face, and requires only an inspection of the judgment roll to demonstrate its want of validity, it may be collaterally attacked, and treated as an absolute nullity, wherever it is relied upon for any purpose. Pettis v. Johnson, 78 Okl. 277, 190 P. 691; Good v. First National Bank of Roff, 88 Okl. 110, 211 P. 1051. A judgment only voidable for extraneous fraud may be set aside by a direct attack, as provided by law, or in equity, and evidence of such fraud justifying the vacating of a judgment for fraud must be positive, clear, and convincing. Neff v. Edwards, 107 Okl. 101, 230 P. 234; Pettis v. Johnson, supra.

I am of the opinion that the evidence in this case is wholly insufficient to bring it within the established rule announced with unanimity by the authorities. The decree will be for the defendants, quieting their title and dismissing the plaintiff's bill.