## KIRKPATRICK v. BURGESS.

No. 1346.   Opinion Filed June 27, 1911.

(116 Pac. 764.)

**INDIANS—Minor Male Ward—Effect of Marriage on Guardianship.**
The marriage of a minor male ward, member of the Cherokee Tribe of Indians, of less than one-half Indian blood, does not of itself terminate his guardianship as to his allotment, nor abate the jurisdiction of the county court, and a guardian under such jurisdiction has authority to make a sale of said minor's allotted lands.

(Syllabus by the Court.)

Williams and Hayes, JJ., dissenting.

*Error from District Court, Tulsa County; L. M. Poe, Judge.*

Action between J. F. Kirkpatrick and Daniel W. Burgess, a minor; Andrew Roth, guardian. From the judgment, Kirkpatrick brings error. Affirmed.

*Martin, Rice & Lyons,* for plaintiff in error.

*J. L. Harnage,* for defendant in error.

DUNN, J.   This case presents error from the district court of Tulsa county, and the sole question involved is presented by an agreed statement of counsel, wherein it is made to appear that one Daniel W. Burgess is a minor citizen of the Cherokee Nation, of one-eighth blood, and that Andrew Roth was his duly qualified and acting guardian, appointed some time prior to statehood. That on the 16th day of November, 1909, the county court of Tulsa county made an order licensing the said guardian to sell at public sale certain real estate of said minor, taken as an allotment. That notice of the sale was duly given and sale made on the 10th day of December, 1909, and the land purchased by the plaintiff in error, J. F. Kirkpatrick; the confirmation thereof taking place in the county court, on December 22, 1909. That subsequent to the said confirmation the guardian made and executed his deed conveying said premises to the said plaintiff in error, who deposited the amount required under the order, and which, with the deed, has been held pending the determination of this controversy. That on the 12th day of November, 1909,

the said Daniel W. Burgess was lawfully married to one Lottie Parker, which date was prior to the date on which the order of sale was made.

The question presented is, as stated by counsel for the parties, ·did the county court of Tulsa county lose jurisdiction in said matter to make said order of sale, and to make orders necessary to complete said sale, by reason of the marriage of the said male minor, or was said sale valid; there being no other objection thereto than that based on said marriage? Plaintiff in error takes the position that the marriage terminated the guardianship over the estate of the minor, including his allotted lands, and that the acts of the court were void, and no title was conveyed under the deed delivered.

Section 4952, Comp. Laws of Oklahoma 1909, provides:

"The power of a guardian appointed by the court is suspended only: 1. By order of the court; or, 2. If the appointment was made solely because of the ward's minority, by his obtaining majority; or, 3. The guardianship over the person of the ward by the marriage of the ward."

Section 5523, Comp. Laws of Oklahoma 1909, provides:

"The marriage of a minor ward terminates the guardianship; and the guardian of an insane or other person may be discharged by the judge of the county court when it appears to him on the application of the ward or otherwise, that the guardianship is no longer necessary."

In the foregoing statute we have broadly the specific declaration that the "marriage of a minor ward terminates the guardianship." Section 1184, Comp. Laws of Oklahoma 1909, provides that all persons of the age of 21, and all females of age, and all persons legally married, of whatever age, may take title to, hold, mortgage, convey, or make any contract relating to real estate or any interest therein.

It is held by this court, in the case of *Jefferson v. Winkler*, 26 Okla. 653, 110 Pac. 755, wherein the foregoing statutes were considered, that under the operation thereof the marriage of a minor terminated the guardianship, both of his person and estate, and it is certain that, so far as the persons within the pur-

view 'and the operation of these laws are concerned, there is no escape from the conclusion there reached. These statutes, on the adoption of the Constitution, were put in force and made effective throughout the state, and operated alike upon all minors, and marriage discharged and terminated guardianship where such existed, unless by force of some law there were those who were not brought within their scope, or if within their terms are by plain implication excluded from their operation. It is claimed in this case that they do not apply to the minor whose rights are here under consideration, because of the provisions of certain acts of Congress under which he received the land involved, and under which he.and his guardian are attempting to act.

Section 1 of an act of Congress, approved June 16, 1906 (Act June 16, 1906, c. 3335, 34 Stat.), commonly known as the Enabling Act, provides that nothing contained in the Constitution provided for shall be construed to limit or affect the authority of the government of the United States to make any law or regulation respecting the Indians, their lands, property, or other rights, by treaties, agreement, laws, or otherwise that it would have been competent to make if that act had never been passed. The act under which the title to the land here sought to be sold was vested in this minor allottee placed certain restrictions upon its alienation, which, however, were removed under and by virtue of an act of Congress, approved May 27, 1908, c. 199, 35 Stat. 312, which provided, among other things, that all lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen,. and as mixed blood Indians, having less than half Indian blood, including minors, shall be free from all restrictions. · If this were the only law dealing with the subject, the minor in this case could unquestionably have sold his land immediately on his marriage by virtue of the statutes of the state above noted. Section 2 of the act, however, provides:

"The term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

In the case of *Jefferson v. Winkler, supra,* this court held that the marriage of such a minor does not confer upon him or

her authority to sell his or her allotted lands independent of the jurisdiction and supervision of the county or probate courts of the state. Section 6 of the act of Congress referred to also provides that the person and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. Now the question is, Congress having specifically ·reserved to itself the right and authority, and the state having consented to the exercise thereof, to fix the status of the members of the Indian Tribes, and Congress having definitely provided that minority shall continue until certain ages are attained, and this court having recognized such status as fixed by Congress, and held that marriage of minors will not qualify them to deal with their lands, and that they could not sell them independent of the jurisdiction and supervision of the probate courts of the state, will the fact that they marry, in view of the power retained by Congress, defeat the necessary jurisdiction, in order that they may enjoy the right to sell? Under the statutes of the state, as we have noted above, the mere marriage of the minor, except as to allotted lands, qualifies him to sell his land; hence the necessity of any supervision on the part of the probate court or of any guardian does not exist. Such parties, under the state statutes, so far as the exercise of this right is concerned, are no longer regarded as minors. They then become fully endowed with all of the rights of one who has attained his majority. The status of these minor Indians, with less than half Indian blood, as to their allotments, however, is not changed by reason of the marriage. They still continue, as to such real estate, in the eyes of the law minors, and in our judgment their marriage would not defeat or terminate the guardianship.

Section 5472, Comp. Laws of Oklahoma 1909, provides that "the county court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either, or both of them, of minors," etc. Daniel W. Burgess was a minor, and that he should have a guardian in order that he may sell his land is both convenient and necessary, and under

these circumstances, in our judgment, if no guardian had been appointed, one could be, and as one has already been appointed there is no reason which we can see why he could not continue to act. The state agreed to the reservation made by Congress of the authority to fix the status of these people; we have a county court with full probate jurisdiction, with power to deal with the estates of minors; this defendant in error is a minor, whose marriage as to his land does not affect his status, and no good reason appears why we should not carry out the congressional intent and the courts accept the jurisdiction provided for in section 6, *supra.* To accept the contention made by plaintiff in error would be to place this minor, after his marriage, in a situation wherein he could not sell his land, and neither could any guardian be appointed, or if appointed act in the sale of it, notwithstanding any necessity, thereby leaving a time in which the land would be absolutely inalienable—a condition contemplated by no one, and which is such an unreasonable situation that no court would accept it, except it was driven to it by provisions of law so plain and unambiguous as to leave no other course open.

Under these circumstances the judgment of the trial court must be affirmed.

TURNER, C. J., and KANE, J., concur; WILLIAMS and HAYES, JJ., dissent.