## DEWALT v. CLINE *et al.*

No. 4220.    Opinion Filed October 8, 1912.

Rehearing Denied December 3, 1912.

(128 Pac. 121.)

1.  **GUARDIAN AND WARD**—Sale of Minor's Land—Jurisdiction of County Court.  A county court, having acquired jurisdiction of the person and estate of a minor, may order the sale of the land of said minor lying and situated in another county of the state.

    (a)  Said court may also confirm said sale and order a guardian's deed to be made in obedience to the order of sale.

2.  **APPEAL AND ERROR** — Review—Findings of Court.  Where there is a conflict in the evidence on an issue, a finding thereon made by the lower court will not be disturbed on review in this court.

(Syllabus by the Court.)

*Error from District Court, Mayes County;*
*Preston S. Davis, Judge.*

Action between W. H. Dewalt and Silas A. Cline and others. From the judgment, Dewalt brings error.    Reversed and remanded.

*Robert F. Blair* and *Henry M. Brown,* for plaintiff in error.

*S. V. O'Hare,* for defendants in error.

WILLIAMS, J.  The questions essential to determine in this case are as follows:

(1)  Has the county court of Wagoner county, it having acquired jurisdiction of the person and estate of a minor, authority and power to order the sale of certain land of said minor, the same being alienable and lying and being situated in Mayes county, Okla., and also authority and power to confirm said sale and order a guardian's deed made in obedience to said order of said court?

(2)  As to the age of a certain allottee, as found by the trial court.

1.   Section 12 of article 7 of the Constitution provides:

"The county court, coextensive with the county, shall have original jurisdiction in all probate matters, and until otherwise provided by law, shall have concurrent jurisdiction with the district court in civil cases in any amount not exceeding one thousand dollars, exclusive of interest.   *   *   *"

Section 13 of the same article provides:

"The county court shall have the general jurisdiction of a probate court.   It shall probate wills, appoint guardians of minors, idiots, lunatics, persons *non compos mentis,* and common drunkards, grant letters testamentary and of administration, settle accounts of executors, administrators, and guardians; transact all business appertaining to the estates of deceased persons, minors, idiots, lunatics, persons *non compos mentis,* and common drunkards, including the sale, settlement, partition and distribution of the estates thereof."

Section 23 of the Schedule also provides:

"When this Constitution shall go into effect, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, except of Day county, which shall be transferred to the county court of Ellis county, and the county courts of the respective counties shall proceed to final decree or judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted.   The district court of any county, the successor of the United States Court for the Indian Territory, in each of the counties formed in whole or in part of the Indian Territory, shall transfer to the county court of such county, all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating to estates: Provided, that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

Section 5472 (section 1504, St. Okla. 1893) of Comp. Laws 1909 provides:

"The county court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either, or both of them, of minors who have no guardian legally appointed by will, or deed, and who are inhabitants or

residents of the county, or who reside without the state, and have estate within the county.  *  *  *"

Under the statutes existing at the time of the erection of the state, no sale of the estate of a minor or incompetent could be made except by the county court having jurisdiction to appoint a guardian for such minor or incompetent.  The county court in acquiring jurisdiction of the estate or *rem* had jurisdiction coextensive with the state in the settlement of the estate of the decedent and the sale and distribution of his real estate, and excluded the jurisdiction of the county court of every other county. Sections 5144 and 5510, Comp. Laws 1909; sections 1178 and 1542, St. Okla. 1893; section 2 of the Schedule to the Constitution.

Section 23 of the Schedule, *supra,* contemplated that such pending probate proceedings should continue to final determination just as if there had been no change in the form of government.  *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433; *Davis v. Caruthers,* 22 Okla. 323, 97 Pac. 581.

Did the Constitutional Convention by sections 12 and 13 intend a change as to such probate proceedings arising subsequent to the erection of the state?  When we construe sections 12 and 13 together, we conclude that no such intention was contemplated, but that the words, "the county court, coextensive with the county, shall have original jurisdiction in all probate matters," mean that such county court could acquire original jurisdiction only when a ground therefor existed within the boundaries of the county, and that section 13 means that, such county court having acquired jurisdiction over the estate of such minor, then it could exercise general probate jurisdiction over the same.

In *Lessee of Henry Avery v. John Pugh,* 9 Ohio, 67, it is said:

"The position assumed by the counsel for the plaintiff is that the court of common pleas, whether acting as a court of common law, of chancery, or of probate, is a court of limited local jurisdiction, and cannot take cognizance of matters without or beyond that local jurisdiction.  This, to a certain extent, and as a general rule, is correct.  It must exercise its jurisdiction within the appropriate county, but, when that jurisdiction has been

exercised, the effects are not always limited to the county, or even to the state. A judgment recovered in one county, if the court had jurisdiction, is conclusive of the rights of the parties, not only in that particular county, but throughout the state and throughout the United States, and perhaps throughout the world.

"The court of common pleas is created by the Constitution, and its jurisdiction, in part, defined by that instrument; but it is left principally to subsequent legislation to ascertain the extent of its jurisdiction, as well as the manner in which that jurisdiction shall be exercised. The first section of the third article of the Constitution prescribes that 'judicial power of the state, both as to matter of law and equity, shall be vested in a Supreme Court, in courts of common pleas for each county, in justices of the peace, and in such other courts as the Legislature may, from time to time, establish.' The fifth section of the same article provides that 'the court of common pleas in each county, shall have jurisdiction of all probate and testamentary matters, granting administration, the appointment of guardians, and such other cases as shall be prescribed by law.' Acting under the Constitution, the General Assembly have, from time to time, passed laws regulating the practice of these courts, defining their duties and ascertaining their jurisdiction. In this legislation, however, the common-law, chancery, and probate jurisdiction has been described in different statutes. Each jurisdiction has been kept separate and distinct. To the Constitution, then, and to the laws conformable thereto, we must look in order to ascertain the extent of the jurisdiction of our several courts.

"As before remarked, the court of common pleas is a court of limited local jurisdiction. In other words, it must exercise its jurisdiction in its own appropriate county. But the law authorizes a change of venue, and by such change the jurisdiction is transferred to a tribunal having no original jurisdiction of the case, but which, by the change and the law under which it was made, acquires jurisdiction. And, notwithstanding the locality of the jurisdiction of the court of common pleas, still, when a judgment is once rendered by that tribunal, that judgment may be enforced by execution issued to any other county of the state. This is not because the jurisdiction of the court is coextensive with the state, but because the policy of the law requires that the property of a debtor, wherever located within the state, should be subjected to the payment of his debts. The same reason would operate in case of insolvent estates of deceased persons. The court of common pleas of the county in which the deceased had his last place of residence have not only jurisdiction to appoint,

but it is their duty to appoint administrators on his estate. All the estate of the decedent is made assets for the payment of his debts; the personal estate first being appropriated. The real estate cannot be appropriated without an express order of the court after having ascertained the necessity of such appropriation. How does the court acquire the jurisdiction to make this order? Not from the fact that the land lies within the county, but from the fact that they appointed the administrator, and have a supervisory control over his actions until the estate is settled. And there certainly can be no more impropriety in permitting an order of sale to be executed in a distant county, than there is in permitting an execution issued upon a judgment of the same court sitting as a court of law to be enforced in a distant county."

In *Lessee of Maxsom v. Sawyer,* 12 Ohio, 195, the court said:

"It is said by the plaintiff's counsel lastly that the court of common pleas of Ashtabula county had no jurisdiction over the subject-matter, so as to order the lands of the minor to be sold, which were situated in the county of Geauga. We entertain a different opinion. If this power do not exist, it is very certain that a minor's lands out of the county in which he resides could, under no circumstances, be put to sale. The guardian must be appointed in the county where he resides; and the statute provides that the court, appointing the guardian, may empower him to sell the land, etc. If he have no power to sell land in another county, the common pleas had no jurisdiction over the subject-matter, and all the proceedings are void. We should, however, hesitate to adopt that conclusion. The statute does not in terms certainly confine the sale to lands lying in the county; but provides that the guardian in making sales shall be governed by the same regulations as are required of administrators in the sale of real property; and in the case of the *Lessee of Avery v. Pugh,* 9 Ohio, 67, it was decided by this court that the common pleas of any county might direct an administrator to sell the real estate of the decedent in any other county. * * *"

Such proceeding is an action *quasi in rem. Eaves v. Mullen,* 25 Okla. 702, 107 Pac. 433; *Scarf v. Aldrich,* 97 Cal. 360, 32 Pac. 324, 33 Am. St. Rep. 190; *Crawford v. McDonald,* 88 Tex. 626, 33 S. W. 325.

The reasoning of the foregoing cases sustains the authority of the county court of Wagoner county, it having acquired juris-

diction of the estate of the minor, to order the sale of his real estate lying in another county for his support and maintenance or for reinvestment, etc.

In *Matthews v. Matthews et al.*, 104 Ala. 303, 16 South. 91, it is said:

"In *Turnipseed v. Fitzpatrick*, 75 Ala. 297, 301, the guardian and wards resided in Pike county, and the letters of guardianship had been issued by the probate court of that county. The wards' lands were situated in Bullock county. A petition was filed by the guardian in the probate court of Pike for an order to sell these lands in Bullock for division among the wards. The order was granted, and the lands were sold under it; but this court held the sale utterly void, for the want of jurisdiction in the probate court of Pike county to order it. This case is directly in point on the question we are considering. Upon it the court below sustained a demurrer to the petition of the guardian, and that ruling must be affirmed here unless we overrule *Turnipseed v. Fitzpatrick*. We think that case is unsound in the particular involved here, and will not follow it. The conclusion reached by the court in that case was upon analogies supposed to be furnished by the statute for the partition of lands among tenants in common or joint tenants, and by real action for the recovery of land. The sale in that case was for distribution to the wards. The sale sought in the case at bar is also for distribution to the wards in the sense of supporting and maintaining them. The administration of the estate in each instance was pending in the court which was invoked to make the order. It seems to us that a very much closer analogy exists between such cases as the one referred to and the case at bar on the one hand, and the sale of a decedent's lands on the application of the administrator for distribution on the other, than between partition proceedings and this. Indeed, the analogy we have suggested is perfect; and in respect of lands of an estate we have a statute which authorizes their sale when they cannot be equitably divided among the heirs or devisees 'by order of the probate court having jurisdiction of the estate.' Code, sec. 2105."

The syllabus of said cause is as follows:

"The probate court, having jurisdiction of the guardianship, has also jurisdiction to order the sale of land of the wards for their support and maintenance, wherever the land may be in the state."

Unless the minor is a nonresident of the state, only the county court of the county in which the minor resides or is an inhabi-

tant of may appoint a guardian of his person and estate. Section 5472, Comp. Laws 1909, *supra; Connell v. Moore,* 70 Kan. 88, 78 Pac. 164, 109 Am. St. Rep. 408. That being true, it would follow that unless the county court of Wagoner county, having acquired jurisdiction of the person and estate of the ward in question, was authorized under a proper petition to order the sale of the real estate of said ward lying and situated in Mayes county, no provision of law exists in this state by which the realty of a minor lying and situated without the county of his residence may be sold for his support and maintenance or for the improvement of other real estate owned by him or for reinvestment. Since the erection of the state four (three regular and one extraordinary) sessions of the Legislature have been held. Evidently those legislative bodies have not so construed sections 12 and 13 of article 7 of the Constitution. This legislative construction, whilst not conclusive, is persuasive. *Betts v. Commissioners of Land Office,* 27 Okla. 64, 110 Pac. 766. It is also asserted without contradiction by plaintiff in error that since the erection of the state it has been the universal practice of the county courts, after acquiring jurisdiction over the person and estate of the ward, to fully administer such estate wherever it was situated within the state; that a great number of sales of lands of minors lying and situated within the state, without the county where the guardianship was pending, have been made and confirmed under this practice. A majority of this court also seem to have assumed that such power existed. In *Kirkpatrick v. Burgess,* 29 Okla. 121, 116 Pac. 764, it is said:

"Section 5472, Comp. Laws 1909, provides that 'the county court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either, or both of them, of minors,' etc. Daniel W. Burgess was a minor, and that he should have a guardian in order that he may sell his lands is both convenient and necessary, and under these circumstances, in our judgment, if no guardian had been appointed, one could be, and, as one has already been appointed, there is no reason which we can see why he could not continue to act. The state agreed to the reservation made by Congress of the authority to fix the status of these people. We have a county court with full probate jurisdiction, with power to deal with the estates of

minors. This defendant in error is a minor, whose marriage as to his land does not affect his status, and no good reason appears why we should not carry out the congressional intent and the courts accept the jurisdiction provided for in section 6, *supra* [Act May 27, 1908, c. 199, 35 St. at L. 313]. To accept the contention made by plaintiff in error would be to place this minor, after his marriage, in a situation wherein he could not sell his land, and neither could any guardian be appointed, or, if appointed, act in the sale of it, notwithstanding any necessity, thereby leaving a time in which the land would be absolutely inalienable—a condition contemplated by no one, and which is such an unreasonable situation that no court would accept it, except it was driven to it by provisions of law so plain and unambiguous as to leave no other course open."

Many titles, representing numerous investments made under this practice, therefore depend for their validity upon the construction of sections 12 and 13 of article 7 of the Constitution. In *MaHarry v. Eatman*, 29 Okla. 46, 116 Pac. 935, one of the reasons given for holding that the probate courts prior to statehood had jurisdiction in certain instances to appoint guardians was that it had been the practice recognized for years in the Indian Territory, and that vast property interests had been acquired thereunder, and that such property rights would be unsettled by denying the authority of said courts to make such appointment. Chief Justice Marshall, in *McKeen v. Delancy's Lessee*, 5 Cranch, 22, 3 L. Ed. 25, is authority for this rule. We have also followed it in *Duff et al. v. Keaton*, 33 Okla. 92, 124 Pac. 291.

Further, it was well said by the Supreme Court of Alabama in *Matthews v. Matthews et al., supra:*

"Such court can better judge as to the necessity for the proposed sale, and that is really the only inquiry, and the sale itself can be conducted by the guardian as well under the order of the one court as the other; and it is to such court that the guardian must make report of the sale since that court is charged with the duty of seeing to the proper administration and disposition of the proceeds of sale, and is therefore under a necessity to be thus apprised of the amount of such proceeds; and in all reason, the court having jurisdiction of the guardianship, and charged with the duty of conserving the interests of the wards, and having in its records and files much of the data necessary to intelligent action, should, and in our opinion does, have the power to

confirm or set aside sales of the wards' lands, whether situated in one county or another."

We therefore hold that the county court of Wagoner county, having acquired jurisdiction of the person and estate of the ward in question, had authority to order the sale of the land of such ward lying and situated in Mayes county, to confirm the sale and order the guardian's deed to be made in obedience thereto.

2. At the time the sale of the land in question was confirmed, and the guardian's deed executed pursuant thereto, according to the rolls made by the Commissioners to the Five Civilized Tribes, the said ward was a minor. It is not essential in this case to determine as to the conclusiveness of the rolls, for the trial judge has found that at such time he was a minor. There being a conflict as to the evidence, even though the rolls were not conclusive evidence, this court would not disturb the finding of the trial court. But see *Yarbrough v. Spalding et al.,* 31 Okla. 806, 123 Pac. 843.

It follows that the judgment of the trial court is reversed and remanded, with instructions to proceed in accordance with this opinion.

All the Justices concur.