## COCHRAN v. TEEHEE.

No. 4574.   Opinion Filed May 27, 1913.

Rehearing Denied February 10, 1914.

(138 Pac. 563.)

INDIANS—Jurisdiction of State Courts—Proceeds of Indian Allotment.
The royalties and proceeds of an allotment of a member of the
Cherokee Tribe of Indians, shown by the enrollment record to
be a minor, are, under the provisions of an act of Congress of
May 27, 1908, c. 199, 35 St. at L. 312, subject to the jurisdiction
of the county court in the exercise of its probate jurisdiction,
notwithstanding the fact that by extrinsic evidence it may be
shown that the said member had in fact attained his majority.

(Syllabus by the Court.)

*Error from District Court, Cherokee County;*
*John H. Pitchford, Judge.*

Action by Carrie Cochran against Houston B. Teehee, guardian.   Judgment for defendant, and plaintiff brings error.   Affirmed.

*Crump, Crump & Garrett,* C. N. Haskell, and *Kistler, McAdams & Haskell,* for plaintiff in error.

*Houston B. Teehee, pro se.*

DUNN, J.   This case presents error from the district court of Cherokee county.   A stipulation as to the legal proposition involved entered into by counsel constitutes a sufficient statement of facts, and is as follows:

"It is hereby stipulated and agreed that the plaintiff, Carrie Cochran, is in fact, and was in fact, eighteen years of age on the 23d day of March, 1912.   It is further agreed that she is a Cherokee Indian and enrolled as such and by said rolls approved by the Secretary of the Interior of the United States, she will not be eighteen years of age until September 17, 1913.   It is further agreed that all funds in the hands of said Houston B. Teehee, as her guardian, are royalties and proceeds of the allotment."

The trial court held on the foregoing facts that the plaintiff, Carrie Cochran, was not entitled to have an accounting by her guardian, and to receive from him the royalties and proceeds of her allotment. From the judgment of the court, the cause has been brought to this court for review, and the sole question presented is whether county courts exercising probate jurisdiction, charged with the guardianship of the minor members of the Five Civilized Tribes until they attain their majority as evidenced by the enrollment records in the office of the Commissioner to the Five Civilized Tribes, are charged with the guardianship of said allottees as to the profits or income derived from the allotted lands until the owners thereof attain the age of majority as shown by the enrollment records. The trial court held, as is seen, that the enrollment records were conclusive evidence for all purposes, and denied the allottee the accounting demanded.

It is fundamental, and the statutes of this state (sections 4951, 4952, Comp. Laws 1909 [Rev. Laws 1910, secs. 3338, 3339]), provided that, where a guardian is appointed solely because of his ward's minority, his power is superseded by the attainment of his ward of majority. The plaintiff in this case is a member of the Cherokee Tribe of Indians, one of the Five Civilized Tribes of the Indian Territory, and hence subject, within the scope of its reserved power, to be controlled by congressional legislation. The question raised in this case and the foundation for the contention of counsel for defendant in error is presented by the agreed statement of facts and the provisions of an act of Congress of May 27, 1908, c. 199, 35 St. at L. 312, entitled, "An Act for the Removal of Restrictions from Part of the Lands of Allottees of the Five Civilized Tribes, and for Other Purposes," as follows:

"(1)   Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as

freedmen and as mixed-blood Indians having less than half Indian blood, including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degrees of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe.   *   *   *

"(2)   That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal:   Provided, that leases of restricted lands for oil, gas or other mining purposes,   *   *   * leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise:   And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years.

"(3)   That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman.   *   *   *

"(5)   That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the

land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void.

"(6) That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. * * *

"(9) That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land. * * *"

It has heretofore been determined by the decisions of this and the federal courts that this act prohibits a male allottee under 21 and a female allottee under eighteen years of age from alienating his or her allotments, and renders them subject to the jurisdiction of the county courts in the exercise of their probate jurisdiction. *Jefferson v. Winkler*, 26 Okla. 653, 110 Pac. 755; *Kirkpatrick v. Burgess*, 29 Okla. 121, 116 Pac. 764; *Bell v. Cook* (C. C.) 192 Fed. 597; *Truskett v. Closser*, 198 Fed. 835, 117 C. C. A. 477. And this court has in several cases, beginning with *Yarbrough v. Spalding*, 31 Okla. 806, 123 Pac. 843, held that the provisions of section 3 of the act made, for the purpose of determining questions arising under it, the rolls of the Five Civilized Tribes conclusive evidence as to the age of the citizens. The foregoing decisions are familiar law to the litigants and counsel interested in this and other cases of kindred character; and hence it will be unnecessary for the elucidation of this opinion to quote from or further refer to the conclusions reached therein.

That the statute in question placed the lands of these allottees who were minors under the jurisdiction of the probate courts of Oklahoma, and that such jurisdiction extended to a full superintending control over the lands and to the time when the said minors, as provided by the said act, attained their majority, presents a common highway which both parties to this action travel together; the divergence occurs on the rule obtaining where the proceeds of the allotments are involved and the actual age differs from that shown by the roll. Does this statute then ap-

Cochran v. Teehee.

ply? The Commission to the Five Civilized Tribes was charged with the duty of enrolling the members thereof and making a record of their bloods and ages. Having done this, the presumption must be indulged that the ages as found were determined for all questions arising under this act, to be correct. To the parties whose ages were thus found was parceled the common patrimony, with the limitation that "the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. * * *" Necessarily no question arising under the act relates to any property acquired by the allottees otherwise than by and through the allotment of the lands belonging to the tribe, because the act does not purport to deal with any property except that. Originally all of these allotments were taken with restrictions. So far as they were concerned, restriction was the normal condition under which the members of these tribes took their lands. This is not an ordinary condition in tenure of real property, but an ordinary condition and ordinary people were not presented on the parceling of this estate; hence rules and regulations out of the ordinary were required to meet the situation. Congress, recognizing the incompetency of a great majority of the takers to protect themselves and their property from the rapacity of the white men who surrounded and intermingled with them, allotted the lands with certain restrictions upon the right of the allottees to deal therewith. The purpose for which this was done has been stated in many decisions, and it is not necessary to restate it here. *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566.

Congress retained all of its power and authority, notwithstanding statehood, and its right therein was yielded by the state on its organization. Section 1, Enabling Act (section 413, Williams' Ann. Const. Okla.). The contention of counsel for plaintiff is that the act should be so construed that, while the member was conceded to be incompetent to deal with his land, sell it, lease it, or otherwise dispose of it himself, yet, after this has been done and the proceeds of its sale, mortgage, or leasing were

paid, that he, should he be shown, otherwise than by the rolls, to have attained his majority, should be held to be legally competent and qualified to receive them free from all supervision; that, while it must be conclusively held that he was too weak and incompetent to protect himself while his property was invested in his land, yet that, as soon as it was in money, he would be astute and wise enough to protect himself and properly conserve it; that the lands themselves and their leasing or disposition presented the only questions arising under this act; and that the proceeds themselves were beyond purview. We are unable to concur in this contention. To so hold would be to give full force, faith, and credit to the act during all of the time while the property was in a condition that it could not escape, be destroyed nor stolen, and eliminate all protection from these incompetent people when it would palpably be needed most. That it is not susceptible of the construction contended for is, to our minds, clear not only from the specific terms of the act itself, but from the entire trend of congressional legislation and judicial construction relating to these people. The act itself, in section 1, provides, in reference to certain full and mixed-blood Indian lands, that the Secretary of the Interior may remove the restrictions under rules and regulations concerning the terms of the sale, and also provides for the disposal of the proceeds for the benefit of the respective Indians. Herein is recognized that it is the intention of the lawmakers, not to withdraw the protection of the department from such allottees so far as the proceeds arising from the sale of their lands were concerned. Section 6, as noted above, provides that the minor allottees as well as their property, except as otherwise specifically provided by law, shall be subject to the jurisdiction of the probate courts. The lands of these allottees, as conceded, are subject to such jurisdiction, and we can see no reason for holding that where the lands are exchanged for money, that then the protection is removed. In the absence of any specific congressional provision for the management and control of the proceeds derived from these lands, we presume that Congress intended that they should be managed in accordance with the statutes of the state of Oklahoma relat-

ing to such subjects.   Section 5491, Comp. Laws 1909 (Rev. Laws 1910, sec. 6544), provides as follows:

"Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if such income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any."

The act provided for the retention by the probate court of jurisdiction over the lands of these allottees until they became of age as shown by the rolls, and we believe that a reasonable construction is that, until such allottee becomes of age as shown by the rolls, the disposition of his allotted lands and the proceeds thereof are subject to the jurisdiction of the probate court without reference to what extraneous proof may show with reference to his actual age, and that it was the intention of Congress that this should be so.

Under these circumstances and this construction, the judgment of the trial court must be affirmed.

KANE and TURNER, JJ., concur.   HAYES, C. J., and WILLIAMS, J., concur in conclusion.