### BARNETT v. SECREST et al.
#### and
### BARNETT v. SAME.

No. 11398—Opinion Filed Sept. 18, 1923.

#### Indians—Inherited Lands of Mixed-Bloods— Jurisdiction of Courts to Partition.

Since the act of Congress of May 27, 1908, 35 Stat. L. 312, the district courts of this state have had jurisdiction of actions to partition inherited lands of mixed-blood Indians, including minors, and were authorized to decree a sale of such lands, if found to be incapable of partition by the commissioners appointed by said court.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Wagoner County; Benjamin B. Wheeler, Judge.

Consolidated actions by Peter Barnett (for the use of I. S. White) and Katie Barnett against Henry Secrest and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

George Miller, Jr., for plaintiffs in error.
Watts & Watts and E. J. Broaddus, for defendants in error.

Opinion by THREADGILL, C. This is an appeal from a judgment of the district court of Wagoner county.

The plaintiffs in error, through the death of their mother, Jinsey Barnett, on or about the 17th day of January, 1919, and their sister, Lula Barnett, on or about the month of July, 1900, inherited each an undivided one-half interest in and to the following described real estate situated in Wagoner county, Okla., being lands allotted to the decedents:

"The N. E. ¼ of section 34, township 17 north, range 16 east, being the allotment of Jinsey Barnett, deceased, and the N. W. ¼ of section 34, township 17 north, range 16 east, being allotment of Lula Barnett, deceased.

By a partition proceeding in the district court of Wagoner county in two certain causes known and designated as Nos. 1051 and 1052, commenced in the year 1911, the said lands were sold by order of the court upon report of the commissioners appointed to appraise and make division of the lands that the same could not be divided, and the said proceedings were had and completed while the plaintiffs in error were minors, and the two suits involved in this appeal are brought for the purpose of regaining possession of the land and quieting title by attacking the validity of the partition proceedings.

The plaintiffs in error contend that the partition proceedings were void; that the court had no jurisdiction to partition the said lands for the reason that the plaintiffs in error were minors and were Creek freedmen and inherited the land through their mother and sister, who were Creek freedmen.

This contention was based upon section 6 of the act of May 27, 1908. The defendants in error contended that the partition proceedings by which they acquired title and possession were legal and not in conflict with section 6 of the act of May 27, 1908. The two suits brought by the plaintiffs in error were by agreement consolidated and tried to the court upon an agreed statement of facts as follows:

(1) "That these two certain tracts of land more particularly described as the northeast quarter and as the northwest quarter of section 34, township 17 north, range 16 east, each containing 160 acres, more or less, situated in Wagoner county, Okla., were duly allotted and patented, respectively, to Jinsey Barnett and Lula Barnett as their distributive shares of the tribal lands of the Creek Nation; that said Jinsey Barnett who was the mother, and said Lula Barnett who was the sister, of plaintiffs herein, were both freedmen citizens of the Creek Nation, duly enrolled as such, respectively, after Roll Nos. 3097 and 3098.

(2) "That the plaintiffs, Peter Barnett and Katie Barnett, are freedmen citizens of the said Creek Nation, duly enrolled as such, respectively, after Roll Nos. 3099 and 3101, and after the death of the said Jinsey Barnett, intestate, on or about the 17th day of January, 1900, and of the said Lula Barnett, intestate, in the month of July, 1900, the said plaintiffs each became, by inheritance, the owner of an undivided one-third interest in the allotment of said Jinsey Barnett and an undivided one-sixth interest in the said allotment of said Lula Barnett, and continued to be and were the owners of such interest therein at the time of the commencement by these plaintiffs of certain partition proceedings in said district court of Wagoner county, state of Oklahoma, in two certain causes known and designated as Nos. 1051 and 1052.

(3) "That said lands were sold under such partition proceedings in the manner and form provided by the laws of the state of Oklahoma and the defendants herein acquired thereunder and through conveyances whatever title said district court could give and to the interest of the plaintiffs herein.

4. "That the plaintiffs, Peter Barnett and Katie Barnett, at the time of the commencement of said partition proceedings in the year 1911, and during all the time of the pendency of the same and at the time of the execution of the sheriff's deed for the conveyance of the plaintiff's interest in said lands, to wit: to the said Lula Barnett allotment in January, 1912, and to the said Jinsey Barnett allotment on April 9, 1917, were both minor freedmen citizens and allottees of said Creek Nation, the said Peter Barnett being under the age of 21 years and the said Katie Barnett being under the age of 18 years.

(5) "That after the said Katie Barnett attained her majority, she executed two certain quitclaim deeds to her interest in said lands to one Wash Taylor and to one John Pliley, and that thereafter, and before the commencement of these actions, the said defendants, Henry Secrest and Lelia Secrest, brought an action in the district court of Wagoner county, state of Oklahoma, against the said Wash Taylor and John Pliley, to quiet their title to said lands as against said parties and the court rendered judgment in said cause, decreeing that said Taylor and Pliley had no interest in said lands and quieting the title of said Henry Secrest and Lelia Secrest therein as against said Taylor and Pliley; that the said Katie Barnett, plaintiff herein, was not a party to said action against said Taylor and Pliley."

The court rendered judgment in favor of the defendants, and the plaintiffs have brought the case here by petition in error

and certified transcript of the record for review.

The plaintiffs in error contend that, since they were minors and the lands were allotted lands of their mother and sister, who were Creek freedmen, under section 6 of act of Congress of May 27, 1908, the district court had no jurisdiction of the actions for partition; that only the county court had jurisdiction for the purpose of divesting them of title.

This brings us to a consideration of section 6 of the act of Congress of May 27, 1908, 25 Stat. at L., 312, entitled, "An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes and for other purposes," which reads as follows:

"Section 6. That the persons and property of minor allottees of the Five Civilized Tribes shall except as otherwise specifically provided by law be subject to the jurisdiction of the probate courts of the state of Oklahoma."

The decisions of this court have not been uniform in construing this section. In Brewer v. Dodson et al., 60 Okla. 81, 159 Pac. 329, it was said:

"The exclusive plenary power of Congress to legislate with respect to inherited as well as allotted lands of members and freedmen of the Five Civilized Tribes was not impaired by the advent of statehood. Section 1, Enabling Act, supra. And to our minds the language used in the act of May 27, 1908, viz.: 'that the person and property of all minor allottees of the Five Civilized Tribes, shall, except as otherwise specified by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma,' is sufficiently comprehensive to embrace all property of such minors, including inherited lands, relative to which the federal government had authority to make any law or regulation, and plainly indicates the intention of Congress to exercise its superintending control over such property during the period of minority fixed by that act, by employing the probate courts of the state as federal agencies for that purpose. Clearly it was contemplated that the property of plaintiff, consisting of his allotted and inherited lands, during the period of his minority as fixed by congressional enactment, should be held in trust by guardian subject to the jurisdiction of the county court; and when said lands were sold and converted into money under the order of the court, there occurred merely a change in the form of such property, which was still charged with the trust and remained subject to the jurisdiction of the court until plaintiff reached his majority under the federal act."

This opinion was rendered June 20, 1916, and rehearing denied July 25, 1916.

In the case of Crow v. Hardridge et al., 73 Oklahoma, 175 Pac. 115, this court held:

"The provision of section 6 of an act of Congress of May 27, 1908 (35 Stat. 312), 'that the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma' embraces allotted lands inherited by such minor"

In the body of the decision it is said:

"We, however, can see no distinction in principle between the allotment of an Indian minor and allotted lands of his ancestors inherited by him."

This opinion was rendered July 30, 1918, and rehearing denied September 24, 1918.

Over against these decisions we have the case of Griffin v. Culp, 68 Okla. 310, 174 Pac. 495, which holds:

"The district courts of this state have jurisdiction of a partition suit of a tract of land allotted to a citizen of the Five Civilized Tribes where such land descended to the heirs free of restrictions."

And this holding is applied to minors the same as adult citizens. This decision was rendered August 13, 1918. We have also the case of Salmon et al. v. Johnson et al., 78 Okla. 182, 189 Pac. 537, rendered May 4, 1920, which holds that:

"On July 6, 1909, district courts of this state had jurisdiction of an action to partition inherited lands of mixed-blood Indians, including minors, and were authorized to decree a sale of such lands if found to be incapable of partition by the commissioners appointed by said court."

And this holding is based partly upon the presumption from the act of Congress of June 14, 1918 (40 Stat. 606), section 2, which provides for the jurisdiction of district courts to partition the inherited lands of full-blood Indian heirs, and makes no provision in said act for the partition of mixed-blood Indian heirs of the Five Civilized Tribes, that we are, therefore, to conclude that the latter class were already provided for in this respect.

The later decisions overruling Brewer v. Dobson et al., and Crow v. Hardridge et al., supra, base their reasoning upon the interpretation to be given to the word "property" in said section 6, of the act of Congress of May 27, 1908, and insist that their meaning must be construed in connection with section 9 of said act, and that the language in section 9, fixing the status of inherited lands, gives us two classes of property, the one restricted in the hands of full-blood Indian heirs, the other unrestricted in the

hands of mixed-blood Indian heirs, and that the property of the mixed-blood Indian heirs does not come within the meaning of property mentioned in section 6 of said act.

Taking a common sense view of it, we know the word "property," as used in section 6, does not mean all property the minor is capable of owning. It cannot mean property vested in the minors by purchase or by inheritance from noncitizens by blood.

While the writer of this opinion is not altogether satisfied with the reasoning in Culp v. Griffin and Salmon v. Johnson, supra, in overruling former opinions and holding that property of minors as used in section 6 of act of Congress of May 27, 1908, does not include inherited property of mixed-blood Indians, yet as long as these decisions are the latest expression of this court on this question and the plaintiffs in error have failed to furnish good reasons and higher authority for concluding otherwise and this writer is unable to do so, we are persuaded and hold that these decisions are decisive of the question involved in the instant case, and the trial court did not commit error in rendering the judgments appealed from.

The judgments of the court below are affirmed.

By the Court: It is so ordered.