## TUCK et al. v. SANDERS.

No 15341—Opinion Filed Nov. 17, 1925.

Rehearing Denied Feb. 23, 1926.

**1. Indians—Conveyance of Lands by Married Minor—Lack of Restrictions.**

A married minor member of one of the Five Civilized Tribes of Indians of less than one-half degree of Indian blood may convey lands, acquired after marriage, with proceeds derived from the sale of his allotted lands, free and clear of the supervision of the county court, exercising probate jurisdiction.

**2. Appeal and Error—Change of Theory of Case.**

A theory, different from that upon which the cause was submitted in the trial court, cannot be presented in the Supreme Court on appeal.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Love County; Asa E. Walden, Judge.

Action by Lyndel Ella May Sanders against Henry Tuck et al. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Ames, Lowe, Richardson & Cochran and L. H. Norris, for plaintiffs in error.

Sigler & Jackson, for defendant in error.

Opinion by JARMAN, C. The plaintiff, Lyndel Ella May Sanders, is a duly enrolled member of the Chickasaw Tribe of Indians and is of one-fourth degree Indian blood, and received by allotment her proportionate share of the lands of the Chickasaw Nation; she was enrolled under her maiden name, Lyndel Ella May Straughan, and at all times hereinafter mentioned she was a minor and married. A guardian of her estate sold a portion of her allotment through the county court of Love county in April, 1920, and purchased for the plaintiff the 90 acres of land in controversy from J. R. London, with proceeds derived from the sale of her allotment. On November 26, 1920, the plaintiff, joined by her husband, executed a warranty deed to the defendant Henry Tuck to said 90 acres of land, and thereafter Tuck and his wife executed two mortgages on said 90 acres of land to Gum Brothers Company for $2,500 and $350, respectively, and the mortgage for $2,500 was subsequently as-

signed to the Wisconsin National Life Insurance Company.

This action was commenced by the plaintiff on May 18, 1923, to quiet title to said 90 acres and for possession thereof, resulting in a judgment in her favor, from which the defendants have appealed.

The main question presented here is whether a minor married member of one of the Five Civilized Tribes of Indians can dispose of lands acquired after marriage without the supervision of the county court, when such land was purchased with proceeds derived through a guardianship sale of the unrestricted allotment of the minor.

The plaintiff contends that section 6 of the Act of Congress of May 27, 1908 (35 Stat. 312), providing that "the persons and property of minor allottees of the Five Civilized Tribes shall * * * be subject to the jurisdiction of the probate court of the state of Oklahoma", made the lands here involved, which were purchased with proceeds derived from the sale of the allotment of the plaintiff, a minor, subject to the exclusive jurisdiction of the probate court, and that the same could not be disposed of in any manner by the plaintiff, as long as she was a minor, except through guardianhsip sale in the county or probate court, and cites in support of this contention: Cochran v. Tehee. 40 Okla. 388, 138 Pac. 563; Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; So. Surety Co. v. Lephew, 70 Okla. 172, 173 Pac. 438.

On the other hand, the defendants contend that the term "property", as used in section 6, supra, does not include lands such as are involved here, which form no part of the allotment of the plaintiff, and that since this property was acquired a ter the plaintiff was legally married, she and her husband had a right to convey the same with the same force and effect as any other persons of whatsoever age, without regard to the county or probate court, under the following provision of section 5237, C. S. 1921:

"Provided, that any persons of whatsoever age, who have been legally married and who are otherwise qualified, may dispose of and make contracts relating to real estate acquired after marriage."

Section 2 of the Act of Congress of May 27, 1908, provides that the term "minors", as used in said act, shall include all males under the age of 21 years and all females under the age of 18 years. Under the state statute, supra, the plaintiff, having acquired the property in question after her marriage. could convey the same although she was a minor; whereas, under the act of Congress, supra, she could convey the same only through proper proceedings in the probate court. The question then arises whether the state law or the act of Congress governs this transaction. It is well settled that, when the question of the right of alienation or the power of alienation of an allottee of the Five Civilized Tribes is involved, we must look to the acts of Congress to the exclusion of the state statute. Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846. If the term "property", as used in section 6 of the Act of Congress of May 27, 1908, includes the character of property here involved, then the allottee was without authority to convey said lands, except through proper proceedings in the county court. until her arrival at the age of 18 years. To settle this question, it is necessary to resort to the act itself. We do not believe it was the intention of this act to place any restrictions on a minor allottee as to the disposition of any of his property, except his allotment. The act does not purport to deal with any lands except allotments of the individual allottees. Section 1 of said act fixes the status of the lands being dealt with in the act, and they are confined to **allotted lands** as shown by the following language:

"That from and after 60 days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrances, be as follows."

Section 2, authorizing the leasing of lands, restricts the same to allotted lands. Section 3 provides for the cancellation of oil and gas leases by the owner of any allotted land from which the restrictions have not been removed. Section 4 provides that allotted lands shall not be subjected or held liable to any form of personal claim against the allottee arising prior to the removal of restrictions. Section 5 provides that any attempted alienation or manner of incumbering real estate affecting the title of land allotted to allottees prior to removal of restrictions, shall be null and void. And then we come to section 6, which provides that persons and property of minor allottees shall be subject to the jurisdiction of probate courts of Oklahoma. Up to this time, the act deals exclusively with lands allotted to members of the Five Civilized Tribes, and to our mind, it would be wholly out of harmony with the remainder of the act to hold that the term "property", as employed in section 6, contemplated any property oth-

er than that which was dealt with in the previous sections.

If there were any doubt as to whether any property other than allotments of members of the Five Civilized Tribes was contemplated by said act, it would be dispelled thoroughly when section 9 thereof is considered, in which it is provided that the death of any allottee shall operate to remove restrictions upon the alienation of said allottee's land, and providing further that said lands, the allotment, can be conveyed by full-blood Indian heirs only by the approval of the proper county court. It is manifest that it was the clear intention of the Congress to restrict only the **original conveyance or disposition of the allotment,** whether in the hands of the restricted allottee, or his restricted heirs, full-blood Indians. The Congress merely sought to protect the full-blood Indian heirs in their **original conveyance** of the allotment, which they inherited, by having the county court to approve such conveyance, just as the Congress sought to protect the minor allottee in the **original conveyance** of his allotment by requiring the same to be sold through the probate court.

It was formerly held by this court that the term "property", as employed in section 6, supra, included lands inherited by minor members of the Five Civilized Tribes, regardless of whether such minors were within the restricted degrees of blood, and that the only way the minor could dispose of the same was through the proper probate court. Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Crow v. Hardridge, 73 Okla. 136, 175 Pac. 115. Since that time, this court, in cases of Griffin v. Culp, 68 Okla. 310, 174 Pac. 495; Salmon v. Johnson, 78 Okla. 182, 189 Pac. 537; Barnett v. Secrest, 92 Okla. 142, 218 Pac. 677, has overruled that doctrine, and held that where the heirs are mixed-blood Indians, including minors, it was not necessary that the interests of said minors be conveyed through the probate court, but the same could be conveyed and disposed of through a partition proceeding in the district court. Certainly, an inherited interest of an unrestricted minor mixed-blood Indian heir in lands allotted to his deceased ancestor is "property" in its general sense, but it cannot be contended that it constitutes property within the meaning of the term as employed in section 6, supra, when the court holds that it is not necessary to resort to the probate court in order to divest such heir of his interest therein.

In dealing with a question similar to that involved here, the court in the case of Kirkpatrick v. Burgess, 29 Okla. 121, 116 Pac. 764, at page 124, uses the following language:

"Under the statutes of the state, we have noted above, the mere marriage of the minor, except as to allotted lands, qualifies him to sell his land; hence, the necessity of any supervision on the part of the probate court or of any guardian does not exist."

The following discussion appears in the case of Armstrong v. Phillips, 82 Okla. at page 86, 198 Pac. 499:

"Counsel's first contention, that the land in controversy was restricted, and that the provisions of the act of Congress of May 27, 1908, applied, is without merit. There is no contention that the land was her allotment, and as the trial court specifically found that the purchase money paid for the Gilkey lots was not derived from trust property, said act has no application. Such has been the uniform holding of this court, as announced in the case of Cochran v. Teehee, 40 Okla. 392, 138 Pac. 563, wherein it was said: 'Necessarily, no question arising under the act relates to any property acquired by the allottees otherwise than by and through the allotment of the lands belonging to the tribe because the act does not purport to deal with any property except that.' * * *

"We find, and so hold, that the land in controversy not being the plaintiff's allotment nor purchased with Indian trust funds, her status as to her power to alienate the same was the same as though she was not of Indian blood, and that the Act of May 27, 1908, supra, has no application."

It is clear that this court, after reviewing the earlier decisions, has committed itself to the doctrine that an unrestricted Indian has the same right and authority as a person not of Indian blood to dispose of his land which is not a portion of his allotment, or was not acquired by or through his allotment. The property involved in the instant case forms no portion of the allotment of the plaintiff, and the only question to determine, in view of the foregoing rule, is whether the land in question was acquired **by or through** the allotment of the plaintiff. This question must be answered in the negative. It must be borne in mind that the rule announced in the Armstrong-Phillips Case, and cases therein cited, does not refer to property acquired by the allottee by or through the proceeds of the sale of the allotment, but to property acquired by or through the allotment itself. This distinction is forcibly illustrated in the case of Cochran v. Teehee, supra, where the rents

and profits from the allotment of a minor allottee were involved, and the court held that said property, the rents and profits, were acquired by and through the allotment of the minor. Crops, oil and gas, grown on or produced from an allotment, would constitute property acquired by or through the allotment within the purview of the rule above referred to. In other words, property acquired by or through the allotment, such as rents and so forth, partakes of the nature of the allotment and is in the same class therewith, and the Act of Congress of May 27, 1908, does not attempt to deal with any other class of property.

Counsel for plaintiff insist that the instant case is controlled by the rule announced in the case of Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329, as follows:

"Where allotted and inherited lands of the minor Creek freedman allottee are sold and converted into money by his guardian through the medium of the county court, there occurs a mere change in the form of such property which is still charged with the trust and remains subject to the jurisdiction of the court during the minority of the ward as defined by congressional enactment and shown by the enrollment records."

We have heretofore pointed out in this opinion that this rule with reference to inherited lands has been overruled where the heirs were mixed-blood Indians, including minors. In other words, the interest of mixed-blood minor heirs in inherited land does not constitute property within the purview of section 6 of the Act of Congress of May 27, 1908. The remaining portion of the rule announced in the Brewer-Dodson Case, supra, that a guardianship sale of the allotment of a minor Indian merely effects a change in the form of trust property, and is, therefore, still charged with the trust and is subject to the jurisdiction of the probate court during the minority of the allottee, is based upon a false premise. In the first place, the allotment of the minor allottee is not trust property at all and does not possess any of the elements of trust property. Both the legal and equitable title are vested in the minor. The guardian does not hold the legal title to the allotment for the use and benefit of the ward, which is essential in order to constitute the property as trust property. If the allotment were in fact trust property, where guardian held the legal title, then the rule announced in the Brewer-Dodson Case would be the proper one, for a sale of trust property, or changing it into another form of property, does not deprive the property of its trust character,

and the substituted property assumes the same status as original trust property.

The opinion in the Brewer-Dodson Case is based upon the case of U. S. v. Thurston County, 143 Fed. 287, 74 C. C. A. 425. There, certain Indians of the Omaha and Winnebago Tribes inherited lands from members of the tribes, and the heirs were permitted by the Secretary of the Interior to sell the allotments they had inherited on condition that the proceeds of the sale should be deposited to the individual credit of the heirs in the bank selected by the Commissioner of Indian Affairs. The proceeds of the sale amounted to $36,000. The officers of Thurston county, Neb., assessed these funds for taxation, resulting in an action being brought by the United States to prevent the collection of taxes on said funds. The allotment of lands involved there was under the general allotment Act Feb. 8, 1887, 24 St., 389, sec. 5, and the patent issued was what is termed a "trust patent," providing that the United States will hold the allotment "for the period of 25 years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs." There, the legal title to the lands involved was in the United States, and said lands were held in trust to preserve the same for the exclusive use and benefit of the allottee and his heirs until the expiration of 25 years from the date of the allotment, and then the lands were to be conveyed to the allottee or his heirs "in fee", discharged of the trust and free and clear of all charges or incumbrances of whatsoever nature. The court held that the converting of the trust property into cash was merely a change in the form of the trust property, and did not divest the same of the trust, and, therefore, since the original trust property, the allotment, was not subject to taxation, the proceeds, being the trust property in another form, were not subject to taxation. The question involved in the Thurston County Case, supra, is clearly distinguishable from that involved in the Brewer-Dodson Case, and the rule announced in the Thurston County Case is not authority for the holding in the Brewer-Dodson Case, and the same should be and is hereby overruled.

In the case of United States v. Law, 250 Fed. 218, the allotment of Amanda Perry, a full-blood Cherokee Indian, was involved Restrictions upon the alienation of her allotment were conditionally removed by the Secretary of the Interior. The allotment was sold and the proceeds were invested by

the Secretary in other real estate, and the deed to the land so purchased provided that said land was subject to the condition that no lease, deed, mortgage, power of attorney, contract to sell, or other instrument affecting said real estate, executed during the lifetime of the grantee at any time prior to April 26, 1931, should be of any force or effect, unless made with the consent of and approved by the Secretary. After this deed was executed, Amanda Perry executed a mortgage on said land, thus acquired, which was subsequently assigned to the defendant, Law, and thereafter Law brought suit to foreclose the mortgage, and obtained a decree of foreclosure, and the land was sold at a foreclosure sale by the sheriff of Tulsa county to Law, and a sheriff's deed was executed to him. The United States then brought said action for cancellation of the mortgage and to declare the foreclosure proceedings null and void, and to quiet title to said land, and the court held that, under section 1 of the Act of Congress of May 27, 1908, authorizing the Secretary of the Interior in removing restrictions from the alienation of allotted lands of enrolled full-blood and enrolled mixed-blood Indians of three-fourths or more Indian blood, to impose such rules and regulations concerning the terms of the sale and the disposition of the proceeds for the benefit of the respective Indians as the Secretary might prescribe, the Secretary was vested with authority to insert in the deed the clause imposing restrictions upon the alienation of the lands purchased with proceeds derived from the sale of the allotment of Amanda Perry, and that the land so purchased was not subject to be mortgaged by the allottee without the approval of the Secretary of the Interior, prior to April 26, 1931. A similar holding was made in the case of Sunderland v. United States, 266 U. S. 226, 60 Law Ed. 259, 45 S. Ct. 64.

The only reason the proceeds derived from the sale of the lands involved in the Law Case and the real estate in which said proceeds were invested were not held by the allottee, free and clear of the supervision of the Secretary of the Interior, was by reason of an express provision in the Act of Congress of May 27, 1908, authorizing the Secretary to impose restrictions on the proceeds and the land purchased with the same by rules to be promulgated by him. If it had not been for this provision in said act, the proceeds and the land purchased with the same, although derived from the sale of a full-blood Indian's allotment, could have been mortgaged or disposed of in any way the allottee saw fit. In the case at bar, there is no provision in said act restricting in any manner the handling or disposition of the proceeds derived from the sale of the allotment of a minor allottee of less than one-half degree Indian blood; therefore, it is obvious that it was the intention of the Congress that federal supervision was not to be retained beyond the allotment, itself, of a minor allottee of less than one-half degree Indian blood.

The plaintiff being married, although a minor, could dispose of the land in question, which was no part of her allotment, and was not acquired by or through her allotment, without supervision of the county court exercising probate jurisdiction.

Counsel for plaintiff contend that the property involved in this controversy was not "acquired after marriage" by the plaintiff within the meaning of section 5237, C. S. 1921, wherein it is provided that any person of whatsoever age, who is legally married, may dispose of or make contracts relating to real estate "acquired after marriage." It is also contended by counsel for plaintiff that the plaintiff was under 15 years of age at the time of her marriage, and, therefore, said marriage was illegal under section 7490, C. S. 1921, which provides that "every male under the age of 18 and every female under the age of 15 years are expressly forbidden and prohibited from entering into the marriage relation." These two theories were not relied upon nor presented to the trial court, and the same cannot be presented here for the first time.

The sole ground relied upon for recovery in the trial court is succinctly stated by the plaintiff in her reply as follows:

"That by reason of her (the plaintiff) being a member of the Chickasaw-Choctaw Tribe of Indians, she was restricted, and that any deed executed by her to this land which was purchased with the money derived from the sale of the land which had been allotted to her as a member of said tribe of Indians, would be void and of no effect. * * *"

For the reasons hereinabove given, the judgment of the trial court is reversed, and the cause remanded, with directions to render judgment for the defendants.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 521, § 92 (Anno). (2) 4 C. J. p. 701, § 2609.